660 F.2d 184
 UNITED STATES of America, Plaintiff-Appellant,
v.
Gabriel Robert CAGGIANO, Defendant-Appellee (81-5002).
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond BASZNER (81-5021), Nigel Winfield (81-5022),
Defendants-Appellants.
Raymond BASZNER, Petitioner,
v.
UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF TENNESSEE,
WESTERN DIVISION, AT MEMPHIS, (81-5182), Respondent.
 Nos. 81-5002, 81-5021, 81-5022 and 81-5182.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 15, 1981.
Decided Sept. 17, 1981.
Rehearings and Rehearings En Banc Denied Oct. 23, 1981.
Certiorari Denied Jan. 11, 1982.
See 102 S.Ct. 1015.
 
 Robert F. Collins, Boston, Mass., Walter Underhill, Jr., Edward G. Grogan, Kemper B. Durand, Rosenfield, Borod & Kremer, P.C., Memphis, Tenn., for defendants-appellants.
 W. Hickman Ewing, Jr., U. S. Atty., Joe A. Dycus, Asst. U. S. Atty., Memphis, Tenn., Deborah Watson, Dept. of Justice, Washington, D. C., for plaintiff-appellee.
 Gabriel Caggiano, Winchester, Mass., pro se.
 Before WEICK and KEITH, Circuit Judges, and PORTER,* U. S. District Judge.
 WEICK, Circuit Judge.
 
 
 1
 The Government has appealed to this court under 28 U.S.C. § 1291 from an order of the district court granting the motion of the defendant Gabriel Robert Caggiano, filed in a 1977 criminal case to disqualify the entire United States Attorney's Office in Memphis, Tennessee, consisting of many lawyers because of an alleged appearance of a conflict of interest of only one of the Assistant United States Attorneys in said office. Defendants Baszner and Winfield have appealed to this court from an order of the district court denying their motion to disqualify the entire United States Attorney's Office in Memphis, Tennessee, because of an alleged conflict of interest of one of the assistants employed in the office and said defendants have also filed a petition in this court for a writ of mandamus to compel the district court to grant their motion to disqualify. By order of this court, all of the appeals which were timely filed, and the mandamus proceeding, were consolidated for argument and have been briefed and orally argued.
 
 
 2
 This is the second appeal in this unduly prolonged case which was first tried to a jury that was unable to agree upon a verdict and the court declared a mistrial. The defendants then filed a motion to dismiss the indictment claiming double jeopardy which motion was denied by the court. On appeal, we affirmed by order. United States v. Caggiano, 624 F.2d 1101 (6th Cir. 1980).
 
 
 3
 Appellee Caggiano, joined by Baszner and Winfield, contends that we have no jurisdiction to hear the government's appeal asserting that no final appealable order had been entered. Baszner and Winfield contend that the order denying their motion to disqualify is a final appealable order and in any event, we have jurisdiction in mandamus. In other words, while Baszner and Winfield are claiming that an order granting a motion to disqualify is not a final order as to the government, they assert that an order denying a motion to disqualify is final as to them.
 
 
 4
 For the foregoing reasons and those which follow, we hold that the order granting the motion to disqualify is final as to the government and it has the right to appeal under § 1291 and that we have no jurisdiction to hear the appeals of the defendants, other than Caggiano.
 
 
 5
 We are of the opinion that the district court erred in disqualifying the entire office of the United States Attorney and we therefore reverse.I.
 
 
 6
 On October 13, 1977, a federal grand jury sitting in the Western District of Tennessee, returned a multicount indictment charging Gabriel Caggiano, an attorney at law, (appellee in Case No. 81-5002), Raymond Baszner (appellant in Case No. 81-5021 and petitioner in Case No. 81-5182), and four other co-defendants with mail and wire fraud, interstate transportation of stolen and fraudulently obtained property, and conspiracy to commit these offenses. The indictment arose out of a complex series of transactions, the object of which was allegedly to defraud Elvis Presley out of a jet airplane or airplanes.
 
 
 7
 Following a number of pretrial motions filed by the defendants, the trial of Caggiano, Baszner, and a co-defendant commenced on August 21, 1978.[1] The case went to the jury on September 7, 1978, and on September 11, the jury announced that it had found Baszner not guilty on three counts but was hopelessly deadlocked on the remaining counts, as it also was on all counts relating to Caggiano. The co-defendant was found guilty on three counts and not guilty on all other counts. Upon request of Caggiano and Baszner, the district court declared a mistrial.
 
 
 8
 In November of 1978, a grand jury returned a superseding indictment which named, inter alia, Caggiano, Baszner, and Nigel Winfield (appellant in Case No. 81-5022) as defendants. Within the next nine months, defendants either individually or collectively filed a myriad of motions, including motions by Caggiano and Baszner to dismiss the indictment premised on a claim that retrial would place them twice in jeopardy for the same offense.[2] The latter motions were overruled, and an interlocutory appeal followed to this court with the result as before stated. They all operated to delay the criminal case which in 1981 is not yet ready for the second trial.
 
 
 9
 In May of 1980, while the appeals were pending, Mr. Phil Canale, Jr., Esq., accepted a position as an Assistant United States Attorney for the Western District of Tennessee. Mr. Canale, along with Mr. Edward Kizer, Esq., had represented Caggiano during the first trial and during the preliminary stages of his defense to the second indictment, though the extent to which Canale assisted in Caggiano's defense following the mistrial is not altogether clear and is the subject of some dispute.
 
 
 10
 By order of June 13, 1980, this court affirmed the district court's rulings on the motions to dismiss the indictments.[3] Shortly after receipt of the court's mandate, the district court, on October 15, 1980, scheduled trial of the case for January 5, 1981. On November 25, 1980, Baszner moved to disqualify the entire United States Attorney's Office for the District because of an alleged conflict of interest of one of its many attorneys. Caggiano joined in Baszner's motion on December 15, filing in addition a motion to dismiss for want of a Speedy Trial. Three days later, Winfield too moved to disqualify the United States Attorney's Office.
 
 
 11
 A hearing was held on the motions at which the district court considered the affidavits submitted by each of the defendants in support of their motions as well as affidavits submitted by the government in response. The hearing provided an opportunity for Caggiano and the other appellants, Baszner and Winfield, to offer evidence, but they offered only the affidavits. These affidavits provide in essence as follows:
 
 
 12
 Caggiano In an affidavit filed December 18, 1980, Caggiano states that he retained Canale in November of 1977. Canale had acted as lead counsel during the initial trial and had assisted in formulation and preparation of the interlocutory appeal to this court on the double jeopardy issue. He states that as of August 20, 1979, he had paid Canale in excess of $25,000.
 
 
 13
 On March 18, 1980, while his interlocutory appeal was pending before this court, Caggiano states that he first learned of the possibility that Canale would accept employment in the United States Attorney's Office. He asserts that he had been assured Canale would continue to represent him regardless of any appointment to the United States Attorney's Office. By letter of May 14, 1980, Caggiano learned that the possibility had come to pass, that Canale had received an appointment and would be sworn in on May 16, 1980. In that letter, Canale informed Caggiano that Mr. Kizer would handle oral argument on the appeal, scheduled for June 4, 1980.[4] Nonetheless, it is alleged that Canale suggested that he might still be able to represent Caggiano in other aspects of the case.
 
 
 14
 Canale, according to Caggiano's affidavit, accepted a $500 check on May 20, 1980, as payment for his services and expenses relative to the appeal. Further, on July 9, 1980, Caggiano sought, and was given, Canale's advice as to whether he should petition the Supreme Court for a writ of certiorari. It was not until October 28, 1980, that Canale told Caggiano during a telephone conversation that he no longer could represent him.
 
 
 15
 Baszner Baszner filed a single affidavit in support of his motion. In that affidavit, Baszner alleges that he and his attorney, Mr. Vincent Flynn, Esq., had met Mr. Canale and Mr. Kizer several times before and during the initial trial. As a result of those meetings, Canale had become privy to confidential information and strategy relating to his defense.[5] Further, Baszner alleges, Canale had represented him during the final stages of the initial trial. Specifically, Canale on behalf of Caggiano and Baszner, had joined in a motion for a mistrial and renewed an earlier motion for a judgment of acquittal when Baszner's attorney was absent during jury deliberations on September 8 and 11, 1978.
 
 
 16
 Winfield Winfield's motion was supported by the affidavit of his attorney, Mr. Robert F. Collins. Mr. Collins, according to his affidavit, met Canale at various times in the months prior to Canale's appointment and "(d)uring these meetings, various defense tactics and strategy were discussed, evidence was considered and discussed and exchanged between us as counsel for the co-defendants in this cause, and ... (Canale) has material knowledge relative to the defense of (Winfield)."
 
 
 17
 The government The government responded to the defendants' supporting affidavits with six affidavits of its own: two by Mr. Michael Cody, United States Attorney for the Western District of Tennessee; two by Mr. Joe Dycus, an Assistant United States Attorney who had represented the government during the first trial and who had been assigned to the prosecution of the defendant on the superseding indictment; and two by Canale.
 
 
 18
 In his affidavits, Mr. Cody states that he did not "solicit" Canale; rather, Canale approached him. Canale was hired because of his "excellent reputation as an attorney of unquestioned integrity and because of his maturity." (Canale had served as District Attorney General for Shelby County, Tennessee, from 1955 to 1974).
 
 
 19
 Cody denies ever having talked with Canale about the instant case other than to specifically inform him that he would not be allowed to further represent Caggiano. Cody further alleges that
 
 
 20
 (S)ince Mr. Canale became an Assistant United States Attorney, it has been a policy of this office that Mr. Canale and Mr. Dycus (the only attorney in the office working on the case) would not discuss this case and that Mr. Canale would be exposed to nothing concerning this case. To the best of my knowledge, information and belief since Mr. Canale became an Assistant United States Attorney: (1) neither Mr. Dycus, nor Mr. Canale has discussed this case with each other; (2) no other attorney or any other person employed by this office or the Department of Justice has discussed this case with Canale; and (3) Mr. Canale has not been privy to or exposed to any information in this office or the Department of Justice concerning this case. This office and the Department of Justice will continue to make sure that Mr. Canale is not exposed to any information concerning this case and that he does not discuss the case with anyone in this office or the Department of Justice.
 
 
 21
 Mr. Joe Dycus, in his two affidavits, states that he had been assigned to the case since September of 1977. He presented the matter to both grand juries, handled all pretrial work before the first trial, represented the government during the first trial, and prepared the case for trial on the "two or three occasions" when it had been set after the first trial. He has interviewed and is "conversant" with every witness for the government. Dycus further states that he is "intimately familiar" with the facts and documents in this case, including the transcript of the first trial of over seventeen volumes.
 
 
 22
 As a result of his knowledge of the case, Dycus states, it is doubtful that Canale could reveal anything to him that he does not already know. In any event, it was agreed when Canale joined the Office that Canale would not be allowed to talk to anyone in the Office about the case. Since that time, Dycus has not discussed the case with Canale, and, to the best of his knowledge, no one else in the Office or in the Department of Justice has discussed the case with Canale. Dycus pledges to never discuss the case with Canale or to provide Canale access to any of the files and records of the case. He further states that he "thoroughly and honestly" believes Canale will not attempt to discuss the case with anyone.
 
 
 23
 Canale, in his affidavits, states that he applied for the position of Assistant United States Attorney, that he was not solicited or "sought out" by Cody. He swears also that, since his appointment, he has not talked about the case with anyone in the United States Attorney's Office. Further, Canale advised Caggiano upon his appointment that he could no longer represent him. He also advised Kizer, Canale's former law partner, and Caggiano's co-counsel during the initial trial,[6] to also convey to Caggiano the fact that Canale could not represent him any longer. Canale admits, however, that after his appointment Caggiano twice called him long distance to discuss the case, and during those conversations, he answered Caggiano's questions "out of a feeling of professional and personal courtesy."
 
 
 24
 After considering the affidavits and arguments of the parties, the district court determined that no defendant had made any "showing of any actual prejudice to (him) by any revelation, direct or indirect, intended or unintentional, of information by Canale bearing upon their defenses, their strategies or their confidences." The court also was persuaded that Canale, "an experienced attorney of high repute," and Cody each "acted in good faith and that no breach of confidences as to any defendant has occurred." These findings, in our opinion, are supported by substantial evidence and are not clearly erroneous. Nonetheless, the court expressed "concern" over the "appearance of impropriety." Based on that concern, and the desire "to avoid a lengthy trial that could be determined on appeal to be a tainted one," the court granted Caggiano's motion with "considerable reluctance." The district court denied Baszner's and Winfield's motions, however, since neither had enjoyed a genuine attorney-client relationship with Canale and since neither had shown any prejudice.
 
 II.
 
 25
 The Order Disqualifying The Entire Office Of The United
 
 
 26
 States Attorney For Mere Appearance Of Conflict Of
 
 Interest Of One Of Its Many Attorneys Is
 Immediately Appealable Under
 
 27
 28 U.S.C. § 1291.
 
 
 28
 The weight of authority is that in civil cases an order granting a motion to disqualify is immediately appealable as a final order under § 1291 while an order denying a motion to disqualify is not appealable under § 1291. General Electric Co. v. Valeron Corp., 608 F.2d 265 (6th Cir. 1979), cert. denied, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), and Armstrong v. McAlpin, 625 F.2d 433, 440-441 (2nd Cir. 1980) (en banc) vacated on other grounds, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), holds that orders granting disqualification are appealable and Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 896, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), holds that orders denying such motions are not appealable under § 1291. See cases collected in United States Code Service 28 U.S.C. § 1291 Note 72, entitled Disqualification of Counsel and Note 72 in its May 1981 Cumulative Supplement.
 
 
 29
 As to orders in criminal cases, in Carroll v. United States, 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957), the Supreme Court stated:
 
 
 30
 It is true that certain orders relating to a criminal case may be found to possess sufficient independence from the main course of prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 without regard to the limitations of 18 U.S.C. § 3731 ...
 
 
 31
 In United States v. Calandra, 455 F.2d 750 (6th Cir. 1972), we held that an order entered in an independent plenary proceeding is appealable by the government under § 1291. We relied on United States v. Wallace & Tiernan Co., 336 U.S. 793, 69 S.Ct. 824, 93 L.Ed. 1042 (1949), and Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275 (1929).
 
 
 32
 In United States v. United States District Court, Etc., 645 F.2d 7 (6th Cir. 1981), we held that the government could appeal under § 1291 from an order of the district court granting defendant's motion to reduce his sentence in a criminal case.
 
 
 33
 It is obvious that 18 U.S.C. § 3731 providing for appeals from certain orders and decisions by the government in criminal cases has no application to the present case. There is nothing in this statute or in its legislative history which inhibits appeals under § 1291 where applicable and as held by decisions hereinafter set forth.
 
 
 34
 In United States v. Cowan, 524 F.2d 504 (5th Cir. 1975), cert. denied, sub nom., Woodruff v. United States, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976), the government, in an opinion written by Judge Murrah, was permitted to appeal under § 1291 from an order of the district court denying the motion of the United States Attorney under Rule 48(a) to dismiss criminal proceedings and appointing private special prosecutors to continue prosecuting the case. In reviewing the merits, the court held that the district court had abused its discretion in entering the order denying the government's motion and in appointing a private special prosecutor to replace the United States Attorney.
 
 
 35
 The decision of the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is applicable here. It was recently applied by the Supreme Court in Firestone Tire & Rubber Co. v. Risjord, supra, 449 U.S. 896, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981). Justice Marshall, who wrote the opinion for a unanimous court, stated inter alia :
 
 
 36
 Our decisions have recognized, however, a narrow exception to the requirement that all appeals under § 1291 await final judgment on the merits. In Cohen v. Beneficial Industrial Loan Corp., supra, we held that a "small class" of orders that did not end the main litigation were nevertheless final and appealable pursuant to § 1291. Cohen was a shareholder's derivative action in which the Federal District Court refused to apply a state statute requiring a plaintiff in such a suit to post security for costs. The defendant appealed the ruling without awaiting final judgment on the merits, and the Court of Appeals ordered the trial court to require that costs be posted. We held that the Court of Appeals properly assumed jurisdiction of the appeal pursuant to § 1291 because the District Court's order constituted a final determination of a claim "separable from, and collateral to," the merits of the main proceeding, because it was "too important to be denied review," and because it was "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id., (337 U.S.) at 546 (69 S.Ct. at 1225). Cohen did not establish new law; rather, it continued a tradition of giving § 1291 a "practical rather than a technical construction." Ibid. See, e. g., United States v. River Rouge Improvement Co., 269 U.S. 411, 413-414 (46 S.Ct. 144, 145, 70 L.Ed. 339) (1926); Bronson v. LaCrosse & Milwaukee Railroad Co., 2 Black 524, 530-531 (17 L.Ed. 347) (1863); Forgay v. Conrad, 6 How. 201, 203 (12 L.Ed. 404) (1848); Whiting v. Bank of the United States, 13 Pet. 6, 15 (10 L.Ed. 33) (1839). We have recently defined this limited class of final "collateral orders" in these terms: "(T)he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, supra (437 U.S. 463) at 468 (98 S.Ct. 2454 at 2458, 57 L.Ed.2d 351) (footnote omitted). See Abney v. United States, 431 U.S. 651, 658 (97 S.Ct. 2034, 2039, 52 L.Ed.2d 651) (1977).
 
 
 37
 The order of the district court disqualifying the entire Office of the United States Attorney was a final determination of the claim. The United States Attorney's Office, whose duty it was to prosecute criminal actions in the district, was finally precluded from performing its statutory obligations. The claim was "separable from, and collateral to" the merits of the main proceeding and was "too important to be denied review" and was "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
 
 
 38
 Unlike a private attorney, the United States Attorney's Office ought not to be required to disobey the order of the court and subject itself to contempt charges in order to obtain appellate review of the district court's order. Such conduct would only have engendered public disrespect of the United States Attorney's Office which it ought never to be required by law to endure. It is the sworn duty of law enforcement agencies to obey the law. For them to disobey the law will never be tolerated.
 
 
 39
 We now reach the merits of the case. In disqualifying the entire United States Attorney's Office, the district court in its ruling impliedly relied on Disciplinary Rule 5-105(D) of the ABA Code of Professional Responsibility as that Rule was relied on in the defendant's motions to disqualify. There is, of course, quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government. The ABA Committee on Professional Ethics recognized there are substantial reasons against treating the government as a private enterprise in its Formal Opinion 342, 62 A.B.A.J. 517 (1976). The Committee discussed the situation similar to this case where a lawyer leaves a private practice for government service. The Committee ruled that other government lawyers in the office are not disqualified from handling matters in which their new associate was involved in his former practice. The Committee stated:
 
 
 40
 When the disciplinary rules of Canons 4 and 5 mandate the disqualification of a government lawyer who has come from private practice, his governmental department or division cannot practicably be rendered incapable of handling even the specific matter. Clearly, if DR 5-105(D) were so construed, the government's ability to function would be unreasonably impaired. Necessity dictates the government action not be hampered by such a construction of DR 5-105(D). The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. The important difference in the adversary posture of the government lawyer is recognized by Canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe DR 5-105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of DR 4-101, DR 5-105, DR 9-101(B), or similar disciplinary rules.
 
 
 41
 The Committee concluded that when the individual attorney is separated from any participation on matters affecting his former client, "vicarious disqualification of a government department is not necessary or wise."
 
 
 42
 Obviously, this Opinion of the ABA Committee was never called to the attention of the district judge as he did not discuss it.
 
 
 43
 Even prior to the ABA Opinion 342, it was recognized that disqualification of an entire government department, because of a conflict of interest of a government attorney arising from his former employment, would not be appropriate. United States v. Standard Oil Company, 136 F.Supp. 345, 363 n. 34 (S.D.N.Y.1955, Judge Kaufman) (dictum).
 
 
 44
 As before stated, no prejudice has resulted to anyone in this case and it is time that the long delays from the various maneuvers be brought to a halt and that the case be tried on its merits.
 
 
 45
 We have no jurisdiction over the appeal of defendants-appellants Baszner and Winfield as the order denying their motion to disqualify from which they appeal is not a final appealable order as to them under 28 U.S.C. § 1291. In re Grand Jury Subpoenas, 584 F.2d 1366 (6th Cir. 1978), cert. denied, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979).[7] This is also an inappropriate case for the issuance of a writ of mandamus and the petition is hereby dismissed.
 
 
 46
 The judgment of the district court is reversed and the case is remanded for trial.
 
 ORDER
 ON MOTION FOR MODIFICATION
 
 47
 Before WEICK and KEITH, Circuit Judges and PORTER,* U. S. District Judge.
 
 
 48
 Upon consideration of the government's motion for modification of the judgment order, it is clear from an examination of our opinion, that this case did not present the question whether the government could appeal from an order denying a motion to disqualify an attorney. The government filed no such motion, and its motion for modification is therefore denied.
 
 
 
 *
 Honorable David S. Porter, Senior District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Prior to trial, two co-defendants Phillip Kitzer, Jr., and Frederick Pro entered pleas of guilty. Trial of the remaining co-defendant, J. Lawrence Wolfson, had been severed
 
 
 [2]
 Docket sheets from the district court indicate that no fewer than 32 defense motions were filed during this period, exclusive of any motions filed by co-defendant J. Lawrence Wolfson
 
 
 [3]
 United States v. Caggiano, 624 F.2d 1101 (6th Cir.), cert. denied sub nom., United States v. Baszner, 449 U.S. 879, 101 S.Ct. 226, 66 L.Ed.2d 102 (1980)
 
 
 [4]
 As earlier indicated, Mr. Kizer had participated in Caggiano's defense during the first trial. Until Canale's appointment to the United States Attorney's Office, Canale and Kizer were members of the law firm of Canale, Walsh, Kizer & Gaerig
 
 
 [5]
 Both Baszner and Winfield have refused to disclose either to the district court or this court the nature of the alleged confidential information or elements of defense strategy revealed to Canale
 
 
 [6]
 Kizer was Caggiano's counsel of record when the motion to disqualify was filed. He has since been granted leave to withdraw
 
 
 [7]
 In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 896, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court held that the denial of a motion to disqualify in a civil case was not appealable under § 1291 prior to final judgment in the underlying litigation. The Court, however, not having been presented with the issue, expressed no opinion on the question of whether an order denying a motion to disqualify in a criminal case would be appealable under § 1291. 101 S.Ct. at 672, n. 8
 We discern no reason why the result should be different in a criminal proceeding. The requirements of § 1291 are to be applied in the same manner and, if anything, the policy of avoiding piecemeal and unduly protracted litigation weighs more heavily in a criminal proceeding than it does in a civil action.
 
 
 *
 Honorable David S. Porter, Senior District Judge for the Southern District of Ohio, sitting by designation