UNITED STATES, Appellee,

v.

Private (E–1) Stephen A. CARREIRO, SSN 010–56–8223, United States Army, Appellant.

CM 442337.

U. S. Army Court of Military Review.

23 Nov. 1982.

Colonel Edward S. Adamkewicz, Jr, JAGC, Major Raymond C. Ruppert, JAGC, Major Joyce E. Peters, JAGC, and Captain Marcus C. McCarty, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Captain Thomas E. Booth, JAGC, and Captain Peter M. Donawick, JAGC, were on the pleadings for appellee.

Before O'DONNELL, COHEN and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

NAUGHTON, Judge:

On 1 and 7 April 1982 the appellant was tried by a military judge sitting as a general court-martial at Fort Polk, Louisiana. He was arraigned on charges alleging the violation of a lawful general order by entering a troop billet area designated for occupancy by female military personnel, housebreaking, and indecent assault (two specifications), violations of Articles 92, 130, and 134, Uniform Code of Military Justice (hereinafter UCMJ), 10 U.S.C. §§ 892, 930, and 934 (1976). Contrary to his pleas, the appellant was convicted of violating a lawful general order, and the lesser included offenses of unlawful entry and indecent, lewd, and lascivious acts with another (two specifications), violations of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892 and 934 (1976). His approved sentence provides for a bad-conduct discharge, confinement at hard labor for one year, and forfeitures of all pay and allowances.

Appellant contends: (1) that the offenses of violation of a lawful general order and unlawful entry are multiplicious for purposes of findings and sentence, (2) that the convening authority erred in appointing, and the military judge erred in failing to disqualify, the trial counsel, and (3) that the evidence is insufficient as a matter of law and fact to prove the appellant guilty of committing indecent, lewd, and lascivious acts with a Private First Class (PFC) Crawford. Appellant's second assignment of error was brought to our attention by both appellate defense and the appellant. *See United States v. Grostefon*, 12 M.J. 431 (CMA 1982). We find appellant's contentions to be without merit and affirm the findings and sentence.

During the early morning hours of 16 March 1982, appellant, in violation of a lawful general order,[1] followed PFC Leppala into the female troop billets which housed members of the appellant's unit. Once inside, appellant entered the room occupied by PFC Crawford and Private (PVT) Campbell.

PFC Crawford testified that as she awoke the appellant came over to where she had been sleeping and laid on her bed. As she rolled over, appellant's hand brushed across her chest. PFC Campbell had on night clothes and the bed covers pulled over her at this time. She also testified that the appellant rubbed his hand up and down her leg. She attempted to persuade appellant to leave by telling him that she was pregnant and calling to her sleeping roommate. She indicated, however, that she was neither frightened nor offended by the appellant's conduct.

When appellant learned that another female was in the room, he went over to PVT Campbell and laid on her bed. At this point, PFC Crawford got out of bed and dressed. Campbell testified that her efforts to get the appellant to leave were unsuccessful and she became scared. She stated that appellant grabbed her breasts, tore her nightgown, fondled her then, exposed breasts, and placed his head down near her crotch. PVT Campbell was sitting up at this time with the appellant forcing her against the wall. She then called for PFC Crawford to help her. PFC Crawford came over and pulled the appellant away from PVT Campbell and onto the floor.

PVT Campbell then ran over to PFC Leppala's and PFC Dozier's nearby room with the appellant in pursuit. Appellant forced his way into their room and again grabbed PVT Campbell. Leppala and Dozier succeeded in removing the appellant from the room and locked the door. Appellant departed the billets when Leppala went to contact the Charge of Quarters and the First Sergeant. All of the witnesses, agreed that the appellant was intoxicated.

## MULTIPLICITY

After findings, the trial defense counsel requested that the military judge treat the offenses of violation of a lawful general order and unlawful entry as multiplicious for sentencing purposes. The military judge stated that he would "take into account the nature and the circumstances of what had been shown" in determining an appropriate sentence, but he refused to rule as a matter of law that the offenses were multiplicious. Appellant now contends that these two offenses are multiplicious for purposes of both findings and sentence because they were part of a single integrated transaction.

This Court recently summarized the rules governing multiplicity determinations in *United States v. Jefferson*, CM 442048, 14 M.J. 806 (ACMR 1982). As we emphasized there, no one test for multiplicity is controlling in all circumstances, *United States v. Harrison*, 4 M.J. 332 (CMA 1978), and neither the single integrated transaction nor single impulse test should be used "as a talisman to overcome more penetrat-

---

1. The order provides, in pertinent part: "No male military personnel will enter any areas of Fort Polk troop billets designated for occupancy by female military personnel." Paragraph 1a, Fort Polk Policy Number 55, subject "Barracks Off-Limits Areas," (effective 23 July 1979, revised 20 July 1981).

ing analysis when there are clearly two or more distinct criminal acts that arose out of essentially one overall transaction or course of conduct." *United States v. Burney,* 21 U.S.C.M.A. 71, 73, 44 C.M.R. 125, 127 (1971).

Although the appellant's unlawful entry charge and his violation of a lawful general order prohibiting male soldiers from entering the female barracks area were part of a "single integrated transaction," this does not end our analysis.

■ Applying the "societal norms test," *United States v. Beene,* 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954), we believe that both the violation of the lawful general order and the unlawful entry offenses were reasonably charged. The unlawful entry offense concerns the preservation of the sanctity and privacy of a person's dwelling place, whereas the violation of a lawful general order concerns the proscription of commingling of male and female military personnel in troop billet areas. The purpose of such general orders is to further the Army's distinct interest in preserving good order and discipline within a command by prohibiting the mixing of male and female soldiers in troop billets. It is of no consequence that female soldiers might consent to or encourage the entry of male soldiers into female billets areas. In the instant case the appellant infringed upon the Army's disciplinary interest when he entered the female billets; he aggravated this unlawful conduct by then entering PFC Crawford's and PVT Campbell's room without their permission.

■ Finally, each offense includes an element the other does not, neither is a lesser included offense of the other, and each requires proof of different facts. *Compare* paragraph 3–27 *with* paragraph 3–185, Military Judges' Benchbook, DA Pam 27–9 (May 1982). Accordingly, we conclude the simultaneous charging of these offenses was reasonable, and that they are separately punishable.

## DISQUALIFICATION OF TRIAL COUNSEL

Prior to entering his plea, appellant through his trial·defense counsel made a motion for appropriate relief in the form of requesting that a different prosecutor be appointed on the ground that appellant feared that the trial counsel's marriage to another attorney within the Trial Defense Service at Fort Polk would lead to inadvertent leaks of information relevant to appellant's case.

Both counsel were questioned by the military judge regarding an actual conflict of interest. Trial defense counsel stated that he had discussed this matter with the appellant and he further stated: "I don't think there has been any pressure that would stop me from representing my client to his full and best interests . . ." Trial defense counsel also acknowledged that he had an ethical duty to refrain from disclosing information concerning appellant, so he did not discuss appellant's case with the trial counsel's husband. The trial counsel stated that she had not discussed appellant's case with her husband and she did not believe any conflict of interest existed. The military judge ruled that, although trial defense counsel was required to inform appellant of the potential conflict and obtain appellant's consent to his continued representation, appellant did not also have the right to choose who would prosecute his case. The military judge then explained the situation to the appellant and further advised him of his right to retain civilian counsel or request military counsel from another post. Appellant indicated that he was satisfied with his appointed defense counsel and perceived no problems from his continued representation. After appellant and his trial defense counsel privately discussed the alternatives regarding representation, appellant reaffirmed his election to continue with his appointed defense counsel rather than seek another attorney. The military ·judge denied the motion after satisfying himself that no unethical exchange of information between the trial defense counsel and the trial counsel's spouse or between the trial counsel and her spouse had occurred. He specifically found that there was no factual or ethical basis for the disqualification of either counsel.

■ Appellant asserts that the Government, through its assignment and appointment policies, has unlawfully interferred with appellant's right under the sixth amendment of the Constitution and Articles 27 and 38(b), UCMJ, 10 U.S.C. §§ 827, 838(b), to the effective assistance of counsel. There is no dispute that an essential element of that assistance is the right of an accused to communicate freely with his defense counsel without fear that any confidence or secret will be improperly disclosed. *United States v. Bennett,* 28 C.M.R. 650 (NBR 1959). It is equally true that the Government may not improperly interrupt an established attorney-client relationship. *See United States v. Iverson,* 5 M.J. 440 (CMA 1978). Appellant grounds his claim of denial of effective assistance of counsel on the assertion that his uneasiness over the potential conflict of interest subtlely inhibited frank discussion of his case with detailed defense counsel.

■ The record indicates that both trial defense counsel and trial counsel were acutely aware of their ethical responsibilities, appellant was fully informed of the possibility of a potential conflict, the military judge admonished both counsel regarding their respective professional and ethical obligations, and appellant made a free and knowing choice to retain his appointed trial defense counsel after discussing alternative representation. There is no evidence of actual conflicting interests. Where the "potential" conflict is so ephemeral and the appellant's unease so inarticulable, and

where appellant could have chosen representation by counsel outside of the Fort Polk Trial Defense Service office had he believed his defense was truly compromised, we find the convening authority's appointment of trial counsel in this case did not deprive appellant of effective assistance of counsel.[2]

## SUFFICIENCY

■ The evidence with respect to appellant's indecent acts with PFC Crawford established that while appellant was laying on PFC Crawford's bed, his hand came across her chest and he rubbed his hand up and down her leg. PFC Crawford testified that she was not offended by appellant's conduct. In *United States v. Johnson,* 4 M.J. 770 (ACMR 1978), this Court held:

> An indecent, lewd or lascivious act with another signifies a form of aggravated disorderly conduct. The terms 'indecent', 'lewd', and 'lascivious', are synonymous and signify a form of immorality which has relation to sexual impurity. In addition, the act must, in order to constitute the offense, be such as to excite lust and deprave the morals with respect to sexual relations regardless of whether the victim is consenting or not.

*Id.* at 771 (footnotes omitted). We are satisfied beyond a reasonable doubt that either act of the appellant was sufficient to support his conviction for this offense in question, particularly when appellant's conduct is examined in light of his contemporaneous

---

2. *United States v. Caggiano,* 660 F.2d 184 (6th Cir.1981); ABA Comm. on Ethics and Professional Responsibility, Formal Op. 340 (1975) (addressing the relevant ethical factors involved where both husband and wife are lawyers but they are not practicing in association with one another). Cf. ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1235 (1975) (indicating a single Coast Guard legal office could, under proper safeguards, provide both trial counsel and defense counsel in the same case); Note, *Legal Ethics—Representation of Differing Interests by Husband and Wife: Appearance of Impropriety and Unavoidable Conflicts of Interest?* 52 Den. L.J. 735 (1975).

It is also noted that this issue is one of many matters presently being addressed by the ABA Commission on Evaluation of Professional Standards. Model Rules of Professional Conduct Rule 1.8(i) (Final Draft 1982) states, "A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client having an interest adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship." "The disqualification stated in Rule 1.8(i) is personal and should not be imputed to members of firms with whom the lawyers are associated." Model Rules of Professional Conduct Rule 1.8(i) comment (Final Draft 1982).

indecent acts with PVT Campbell. *See United States v. Polk,* 48 C.M.R. 993 (AFCMR 1974).

The findings of guilty and the sentence are affirmed.

Judge COHEN concurs.

O'DONNELL, Senior Judge, concurring in part and dissenting in part:

I agree with the majority with respect to sufficiency and the question of the trial counsel's qualification. I dissent, however, on the issue of multiplicity. I would hold that the two offenses are multiplicious for both findings and sentence.

When the appellant entered the barracks and the room in the barracks, this single act resulted in a violation of a local regulation. It also constituted an unlawful entry under the general article. Entering the barracks was a necessary preliminary to entering the room in the barracks. The Government in an act of pleonastic pleading has split this single transaction into two parts by treating the entry into the barracks as a regulatory violation and the entry into the room as an unlawful entry under the general article. Under this philosophy, an accused could be convicted of four offenses—two unlawful entries and two regulatory violations. Whatever test for multiplicity is used—and there is certainly one for every persuasion *—it is unfair in my opinion for the appellant to stand convicted of two offenses for his single act. Under the circumstances, I would dismiss the unlawful entry charges and reassess the sentence.

---

* It is time for the Court of Military Appeals to untangle this judicial thicket by adopting a workable test for multiplicity. *See United States v. Lyles,* 14 M.J. 771 (ACMR 24 September 1982).