Fischer, J., concurring.
{¶ 1} I concur in the decision to deny the motion for reconsideration filed by appellant, Richard Beasley. I write separately, however, to point out that Beasley waived his first argument in support of reconsideration and that well-settled case law runs directly contrary to that argument.
{¶ 2} Beasley argues that because the Office of the Attorney General represented the state in this case, Justice R. Patrick DeWine, son of Attorney General Mike DeWine, was required to recuse himself from this case because a "reasonable and objective observer would harbor serious doubts about the judge's impartiality," In re Disqualification of Lewis, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. As an initial matter, the Office of the Attorney General did not represent the state in this case. The county prosecutor represented the state, and two assistant attorneys general were appointed as special prosecutors to assist the county.
{¶ 3} In any event, Beasley did not file a request for Justice DeWine to recuse himself from this case pursuant to S.Ct.Prac.R. 4.04(B). The privilege to seek disqualification of a judge "is regarded as waived unless claimed at the earliest available opportunity.' " (Emphasis added.) 1 Ohio Jurisprudence, Pleadings and Practice Forms, Section 2:32 (2017); see also In re Disqualification ofPepple, 47 Ohio St.3d 606, 607, 546 N.E.2d 1298 (1989) ("A party may be said to have waived the right to obtain a judge's disqualification when the alleged basis therefor has been known to the party for some time, but the objection is raised in an untimely fashion, well after the judge has participated in the proceedings"). It is well known that Attorney General Mike DeWine is Justice DeWine's father; Beasley knew or should have known the information necessary to request that Justice DeWine recuse himself from this case long before he filed the instant motion for reconsideration. For this *504 reason, Beasley has waived his opportunity to request that Justice DeWine recuse himself and has waived any argument for reconsideration based on Justice DeWine's alleged need to recuse himself.
{¶ 4} More importantly, even if Beasley could overcome his waiver, his substantive arguments are without merit. Beasley argues that this court should grant reconsideration based on an alleged appearance of impropriety leading to a due-process-based structural error. Beasley highlights the father-son relationship between Attorney General Mike DeWine and Justice DeWine but paradoxically mentions In re Disqualification ofCelebrezze, 145 Ohio St.3d 1242, 2015-Ohio-5672, 49 N.E.3d 306, a decision that allowed a judge to hear a case despite the fact that her brother was an attorney with the law firm representing the plaintiff. Beasley merely speculates that the principles set forth in Celebrezze could be altered by the determination of an as-yet-unresolved ethics complaint.
{¶ 5} It is well settled that "[t]he proper test for detennining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." Lewis, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, at ¶ 8.
{¶ 6} Under Article IV, Section 5(C) of the Ohio Constitution, the chief justice has the authority to disqualify judges of the courts of common pleas and the courts of appeals. The Constitution does not provide the chief justice the authority to disqualify other justices. Nonetheless, more than one chief justice of this state has considered the disqualification of judges of the courts of common pleas or the courts of appeals in cases involving arguments directly analogous to the argument raised in the instant motion. Those decisions have provided a consistent rule that is contrary to Beasley's argument, and these cases are extremely persuasive authority. When detennining whether a judge should be disqualified based on familial ties to lawyers working for a governmental entity representing a party, chief justices have focused on the involvement of the judge's family member in the proceeding at hand and the potential for financial gain. See In re Disqualification ofCorrigan, 47 Ohio St.3d 602, 603, 546 N.E.2d 925 (1989) ; In re Carr, 105 Ohio St.3d 1233, 2004-Ohio-7357, 826 N.E.2d 294, ¶ 11-17 ; In re Disqualification of Bates, 134 Ohio St.3d 1249, 2012-Ohio-6342, 984 N.E.2d 17, ¶ 8-9.
{¶ 7} In Carr, Chief Justice Moyer noted that "[s]alaried government attorneys simply ' "do[ ] not have the financial interest in the success of the departmental representation that is inherent in private practice." ' " Carr at ¶ 15, quoting United States v. Caggiano, 660 F.2d 184, 191 (6th Cir.1981), quoting American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion No. 342 (1975). Chief Justice Moyer further explained in Carr that the judge should not be disqualified so long as the judge's spouse, who was an assistant prosecutor, neither entered an appearance in the case nor participated in the presentation of the case. Carr at ¶ 17; see also Corrigan at 603 ("disqualification is not warranted solely because Judge Corrigan is the son of the duly elected prosecuting attorney of this large metropolitan county").
{¶ 8} Similarly, in In re Disqualification of Jennings, 143 Ohio St.3d 1225, 2014-Ohio-5866, 35 NE.3d 531, Chief Justice O'Connor, citing Carr, stated that "[i]t is well established that a spousal relationship between a judge and a government attorney who is not involved in the case before the judge does not automatically warrant disqualification." Id. at ¶ 5; see also Bates at ¶ 9 (trial judge whose spouse was prosecuting attorney not required to recuse himself, because there was "no evidence that Prosecutor Bates has participated in the preparation or presentation of the underlying case").
{¶ 9} Additionally, 41 other states have similar judicial-conduct rules. See Adair v. State, Dept. ofEdn., 474 Mich. 1027, 1033-1034, 709 NW.2d 567 (2006). Some of our sister supreme courts have specifically relied on Ohio's interpretation when interpreting their own equivalent rule. See, e.g., In re Jacobs, 802 NW.2d 748, 753 (Minn.2011), citing Carr, 105 Ohio St.3d 1233, 2004-Ohio-7357, 826 NE.2d 294. Only Colorado has case law somewhat supporting Beasley's argument. In Smith v. Beckman, 683 P.2d 1214 (Colo.App. 1984), the Colorado Court of Appeals decided, without the benefit of other courts' interpretation of the applicable rule, that a judge should have disqualified himself from a misdemeanor criminal case because of his wife's position as a deputy district attorney in the same county. Id. at 1215-1216. Even that case is distinguishable from the instant case, however, because the court based its decision on "the close nature of the marriage relationship," which the court described as "more intimate than any other kind of relationship between individuals." Id. at 1216. In any event, courts in many states, including Ohio, have rejected the reasoning in Smith. See, e.g., Carr at ¶ 17; Jacobs at 753-754.
*505 {¶ 10} Ohio's interpretation of Rule 2.11 of the Code of Judicial Conduct is consistent with the overwhelming majority of other states' readings of similar rules. The interpretation does not support the conclusion that Justice DeWine was required to recuse himself from the instant case based on his familial ties to Attorney General Mike DeWine. In fact, the above case law, which was barely mentioned in Beasley's motion for reconsideration, supports the opposite conclusion.
{¶ 11} Beasley cites a decision of the United States Supreme Court, Williams v. Pennsylvania, --- U.S. ----, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016), in support of his argument that Justice DeWine's participation in his appeal deprived him of due process. In Williams, the court held that that "an unconstitutional failure to recuse constitutes structural error even if the judge in question did not cast a deciding vote." (Emphasis added.) Id. at 1909. However, "[d]ue process guarantees 'an absence of actual bias' on the part of the judge." Id. at 1905, quoting In re Murchinson, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). The problem in Williams was that the chief justice of the Pennsylvania Supreme Court hearing Williams's appeal had been the district attorney at the time of Williams's trial, had participated in the case, and had personally made the final decision to seek the death penalty. That arrangement created "a serious risk that a judge would be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through the adversary process." Id. at 1907. The same risks do not exist here-in part because there is no evidence that Attorney General Mike DeWine participated in the case. Further, Beasley has cited no authority for the proposition that a failure to recuse based on an alleged "appearance of impartiality," as opposed to actual bias, violates due process.
{¶ 12} Given that Beasley failed to request Justice DeWine's recusal under S.Ct.Prac.R. 4.04(B) and that almost every court that has addressed the issue has rejected similar arguments regarding when a judicial officer is disqualified, I find Beasley's first argument in support of reconsideration to be both waived and without merit. Thus, I concur in the decision to deny Beasley's motion for reconsideration.
O'Donnell, J., concurs in the foregoing opinion.