**UNITED STATES of America ex rel. Richard D. PRICE, Jr., Petitioner,**

v.

**Michael P. LANE, Director, Illinois Department of Corrections; Mary Patton, Circuit Clerk of Peoria County, Respondents.**

No. 89–3199.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 24, 1989.

Richard D. Price, Jr., Jacksonville, Ill., for petitioner.

Nathan P. Maddox, Asst. Atty. Gen., Springfield, Ill., for respondents.

## OPINION

RICHARD MILLS, District Judge:

Habeas corpus.

Petitioner—an ex-lawyer—is currently appealing a state court ruling denying his motion to withdraw his guilty plea.[1]

The state court denied Petitioner's request that he be released on bond pending appeal and it is this ruling he now brings before us.

### I—Facts

Price is a former member of the bar of this Court and was charged in Peoria County circuit court with forgery. Ill.Rev.Stat. ch. 38, ¶ 17–1. Specifically, Attorney Price signed clients' names to settlement checks and then deposited those checks into his account. On January 3, 1989, he pled guilty but mentally ill to four of the counts he was charged with.

Price was represented by Mr. Thomas Penn, the Peoria County Public Defender, and a hearing was scheduled in state court on November 12, 1987. Mr. Penn was unable to attend this hearing and, as was his usual practice, asked an assistant public defender to cover for him. The assistant, Mr. Kevin Lyons, appeared at the hearing on behalf of Price. At this hearing, Price was arraigned on additional charges, a misdemeanor charge was dropped, and the judge allowed a motion by the state to take handwriting exemplars from Price. This motion was not contested by the defense.

On February 24, 1989, Price was sentenced to six years of incarceration. He then moved to withdraw his guilty plea and was released from custody for four days (April 6–10, 1989) to secure evidence on his behalf. On May 26, 1989, Price's motion to vacate his guilty plea was denied as was his oral motion for bond pending appeal.

Price then filed an application for stay of sentence and appeal bond with the Appellate Court of Illinois, Third District. Due to a backlog of cases in the Third District, the Supreme Court of Illinois transferred Price's appeal to the Appellate Court for the Fourth District which promptly denied his application for appeal bond. This denial was subsequently affirmed by the state supreme court. Price has now turned to the federal courts for a remedy.

### II—Exhaustion of State Remedies

A state prisoner must exhaust all state remedies prior to turning to the federal courts for relief. 28 U.S.C. § 2254(b). In the case at bar, Petitioner appears to

---

1. The issues raised by Petitioner in support of his petition for a writ of habeas corpus are identical to those raised by him in his motion to withdraw his guilty plea. These issues were fully explored by the state court. Therefore, pursuant to Rule 8 of the rules governing habeas corpus petitions, we have determined that an evidentiary hearing is not required.

have fulfilled this requirement. The circuit court denied his motion for an appeal bond. This denial was affirmed by both the appellate court and the Supreme Court of Illinois. Therefore, we find that this case is properly before us and we can now turn to the merits of the petition.

### III—Habeas Corpus Relief

█ It is an open question whether an individual has a constitutional right to bail. Illinois specifically provides for the release of some defendants pending their appeals. Ill.Rev.Stat. ch. 38, ¶ 110–7(d), ch. 110A, ¶ 609(b). Whatever the merits of the arguments concerning a right to bail, it is clear that when a state has provided for bail pending appeal, an arbitrary denial of bail violates the due process clause of the fourteenth amendment. *United States ex rel. Walker v. Twomey*, 484 F.2d 874, 875 (7th Cir.1973). One district court, in considering the standard a federal court should apply in reviewing a state court's denial of an appeal bond, has stated:

> The grant or denial of bail pending appeal is a matter of judicial discretion to be determined after consideration of all of the pertinent circumstances, and accordingly, we are prohibited from substituting our judgment for that of the state court, unless it clearly appears that the state court's action was wholly beyond the range within which judgment could rationally differ regarding the particular facts in a given situation.

*United States ex rel. Rainwater v. Morris*, 411 F.Supp. 1252, 1255 (N.D.Ill.1976). Any other rule "would authorize an unwarranted and unconstitutional encroachment upon the prerogatives of the states in the due administration of their process of criminal justice." *Simon v. Woodson*, 454 F.2d 161, 165 (5th Cir.1972).

The Seventh Circuit in *Twomey* identified three factors a district court should consider in ruling on a request for an appeal bond. Those factors are: (1) the risk of flight; (2) the probability the convicted person will pose a danger to the community; and (3) the lack of merit in the appeal.[2] *Twomey*, 484 F.2d at 875. Any one or a combination of these factors may justify denial of release. *Id.* In addition, the seriousness of the crime and severity of the sentence are also factors which constitute a rational basis for denying an appeal bond. *United States ex rel. Sampson v. Brewer*, 593 F.2d 798, 799 (7th Cir.), *cert. denied*, 444 U.S. 877, 100 S.Ct. 162, 62 L.Ed.2d 106 (1979). With these considerations in mind, we now turn to the merits of the case at bar.

Petitioner argues that the state court has expressly recognized that he is not a risk of flight nor a danger to the community. In support of this argument, he cites the order of the circuit court which released him for four days prior to the hearing on his motion to withdraw his guilty plea. Petitioner opines that this indicates the state court was not concerned he would flee or endanger the community.

In his response to Petitioner's habeas corpus petition, the Attorney General does not dispute this reasoning. In fact, the Attorney General's response only addresses the merit of Petitioner's appeal and is almost wholly devoid of legal authority. Therefore, we must agree with Petitioner. We believe that if he were released on an appeal bond he would not flee nor would he pose a danger to the community.

Petitioner's problems begin when we turn to the merits of his appeal. Petitioner has raised three grounds which he contends constitute error by the state court. *First*, he asserts that during his guilty plea the trial court incorrectly stated the possi-

---

**2.** One district court recently questioned whether lack of merit in an appeal would be a rational basis for denying bond. *United States ex rel. Nistler v. Chrans*, 720 F.Supp. 115 (N.D.Ill.1989). That court questioned what interest a denial would serve, other than deferring appeals. We respectfully disagree with that court's suggestion that denial of bond will deter appeals. Al-

lowing bond pending appeal in all cases would encourage everyone to appeal so that they could remain free for a few months longer. However, the state has a strong interest in incarcerating convicted felons. When the appeal is meritless, there is no reason the individual should not being serving his sentence and paying his debt to society.

ble penalties for the crimes he was pleading guilty to. *Second*, he argues that the trial court did not inform him of the possibility of consecutive sentences. *Third*, Petitioner argues that his conviction should be reversed because Kevin Lyons, who appeared at a hearing on behalf of Petitioner, was elected State's Attorney of Peoria County and had taken office at the time Petitioner entered his guilty plea.

## A.

■ Petitioner's first two assignments of error implicate Illinois Supreme Court Rule 402 which provides in pertinent part:

> In hearings on pleas of guilty, there must be substantial compliance with the following: (a) Admonitions to Defendant. The Court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following: ... (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;....

We begin by recognizing that literal compliance with this rule is not required. The test for determining whether the trial judge's admonitions were sufficient is whether an ordinary person in the circumstances of the accused would have understood them as conveying the required information. If so, the essentials of this rule have been complied with. *People v. Caldwell*, 55 Ill.2d 152, 304 N.E.2d 292 (1973); *People v. Davis*, 24 Ill.App.3d 758, 321 N.E.2d 382 (1st Dist.1974).

■ In the case at bar, the judge clearly stated that the possible sentence was 3–5 years' imprisonment. The state concedes this and the record is irrefutable. The actual penalty for a class 3 felony is 2–5 years. Ill.Rev.Stat. ch. 38, ¶ 1005–8–1. While it is clear the trial judge erred, the question we must face is whether this error constitutes a meritorious issue for appeal.

If a trial judge were to tell a defendant that the minimum is less than it actually is, a guilty plea could not be intelligently and understandingly entered. *See People v. Fred*, 17 Ill.App.3d 730, 308 N.E.2d 219 (4th Dist.1974). For example, a defendant may plead guilty when the minimum was one year; however, he might prefer to go to trial if he believed that the minimum sentence was two years. When the reverse situation occurs and the judge informs the defendant that the minimum is greater than it actually is, prejudice can result only if the Court imposes a sentence which it erroneously believes to be the minimum term. *People v. Latham*, 73 Ill.App.3d 995, 29 Ill.Dec. 486, 392 N.E.2d 43 (5th Dist.1979). This appears to be what Petitioner is arguing in the case at bar. However, that is not the situation that we are faced with in this case.

In the transcript of the hearing on the motion to withdraw the guilty plea, Judge Bumgarner states "I really don't think I said three year minimum. If you look at my grid sheet there, I don't know why I would have misread it." Thus, it is clear that Judge Bumgarner misspoke at the guilty plea; however, he knew what the actual minimum sentence was and Petitioner was not prejudiced by this error.

## B.

■ Petitioner's second assignment of error is that he was not advised of the possibility he could receive consecutive sentences. In support of this, he cites *People v. Akers*, 137 Ill.App.3d 922, 92 Ill.Dec. 305, 484 N.E.2d 1160 (4th Dist.1985), where the court held that the failure to so advise a defendant was reversible error. *See also People v. Nolte*, 167 Ill.App.3d 915, 118 Ill.Dec. 828, 522 N.E.2d 283 (3d Dist.1988).

The transcript of Petitioner's guilty plea indicates that the following colloquy occurred between the Court, Assistant State's Attorney Nancy Mermelstein, Public Defender Thomas Penn, and Petitioner:

> THE COURT: And the defendant would be eligible for extended term; is that correct?
>
> MS. MERMELSTEIN: No.
>
> THE COURT: No extended term. So the maximum for each count would be

five years. Now, is he eligible for consecutive?

MS. MERMELSTEIN: People's position that would be eligible for consecutive; that the maximum under all theories or all four cases would be ten years.

MR. PENN: We agree with that assessment, Your Honor.

THE COURT: That would be twice the most serious.

MS. MERMELSTEIN: Yes.

THE COURT: However, what it says in the statute is twice the extended term or the most serious, but I guess the extended term is not available.

MS. MERMELSTEIN: No.

MR. PENN: That's correct, Your Honor.

THE COURT: All right. So the maximum would be ten years. Both sides agree to that?

MR. PENN: Yes, sir.

THE COURT: Has anyone threatened you to get you to plead guilty?

THE DEFENDANT: No, sir.

It is readily apparent from the foregoing discussion that the Petitioner was sufficiently advised of the possibility of consecutive sentences as required by Rule 402(a)(2). *Akers* is clearly distinguishable on the ground that the possibility of consecutive sentences was never mentioned in that case. Therefore, Petitioner's second assignment of error must fail.

### C.

■ We now turn to Petitioner's primary assignment of error, which is as follows. Mr. Kevin Lyons was an Assistant Public Defender and appeared on behalf of Petitioner at a hearing when Petitioner's counsel, Mr. Penn, was out of town. Mr. Lyons was subsequently elected State's Attorney of Peoria County and thus became Petitioner's prosecutor at the time Petitioner pled guilty and was sentenced. Such a situation, Petitioner contends, creates a *per se* conflict of interest and thus it is not necessary to prove that this conflict prejudiced Petitioner.

If this were actually the issue before us, Petitioner would be correct. In the case at bar, however, all is not as it seems. In fact, this issue was extensively argued at Petitioner's hearing on his motion to withdraw his guilty plea.

Mr. Lyons did appear on behalf of Petitioner at a hearing. Both Mr. Penn and Mr. Lyons testified that they never discussed the merits of Petitioner's case and Mr. Lyons never saw Petitioner's file. Mr. Penn further testified that he and Petitioner did not object to the motions considered at the November 12, 1987, hearing. The record supports Mr. Penn's testimony. Additionally, Mr. Lyons testified that the only discussion he had with Petitioner at the hearing occurred on the record in the presence of the Court. After the hearing, Mr. Lyons saw Petitioner in the hall, gave him a copy of the order the Court had entered, and Petitioner introduced him to a third party with whom the Petitioner was talking. Mr. Lyons concluded that he had no conversations with the Petitioner concerning the merits of his case, possible defenses, or constitutional implications.

Petitioner's version of the facts is of course somewhat different. He asserts that Mr. Lyons met him before the hearing and discussed his case with him. Furthermore, Mr. Lyons was carrying Petitioner's file and indicated that he was familiar with it. Petitioner also stated that Mr. Lyons visited him in jail at some time to discuss his case. The conflict in testimony was fully explored by the state court at the time of Petitioner's hearing on his motion to withdraw his guilty plea. The state court observed the demeanor of the witnesses and concluded that Mr. Lyons' version was simply more credible. *Cf. Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (when trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error).

Mr. Lyons was subsequently elected State's Attorney of Peoria County and took office prior to Petitioner's entry of his

guilty plea. Mr. Lyons testified that he played no role in the prosecution of Petitioner. He did not assist in the preparation of the case and had no input into any recommended sentence. The record supports Mr. Lyons' testimony. While the covers of the transcripts of Petitioner's guilty plea and sentencing indicate Mr. Lyons was the State's Attorney, they also reveal that the actual prosecutors who handled these matters were Assistant State's Attorneys Nancy J. Mermelstein and Florence L. Bain.

The cases cited by Petitioner are all clearly distinguishable from the facts of the case at bar. In *People v. Gerold*, 265 Ill. 448, 107 N.E. 165 (1914), an attorney represented the defendant for several years and then took over as State's Attorney and personally prosecuted his former client. The attorney examined all of the state's witnesses and cross-examined all of the defense witnesses. The Supreme Court of Illinois reversed the conviction and stated "[w]hen [an attorney] has once been retained and received the confidence of a client he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so clearly related to those of his client or former client as in effect to be a part thereof." *Id.* at 477, 107 N.E. at 185. *See also People ex rel. Livers v. Hanson*, 290 Ill. 370, 125 N.E. 268 (1919) (state's attorney could not represent the county in attempting to oust members of the board of education from office because he had at one time been employed by the school district to help the district obtain consolidation).

The Illinois appellate courts have also addressed this question several times. In *People v. Clucas*, 160 Ill.App.3d 129, 111 Ill.Dec. 959, 513 N.E.2d 402 (5th Dist.1987), an attorney was appointed to represent both the defendant and a co-defendant on a murder charge. The attorney withdrew as to the defendant because of a potential conflict created by inconsistent defenses. That attorney was subsequently elected state's attorney and appeared for the state at a post-conviction hearing. The appellate court held that the attorney had actively represented the defendant to the extent that he could conclude that a potential conflict of interest existed. Therefore, there was a conflict of interest for the attorney to appear on behalf of the state and the dismissal of the defendant's post-conviction petition was reversed. *See also People v. Rhymer*, 32 Ill.App.3d 431, 336 N.E.2d 203 (5th Dist.1975) (conviction reversed because defendant revealed confidences to assistant state's attorney whom defendant attempted to retain for her defense prior to learning that attorney was the prosecutor); *People v. Curry*, 1 Ill.App.3d 87, 272 N.E.2d 669 (4th Dist.1971) (defendant's probation revocation reversed because attorney who represented defendant appeared as the assistant state's attorney during the revocation hearing).

These cases are clearly distinguishable from the facts before us. In each of these prior cases, an attorney actively prosecuted an individual after having learned confidential information while representing the accused. In the case before us, Mr. Lyons did not learn any confidential information and played no active role in Petitioner's prosecution.

■ The state has not cited any cases which are factually similar to that before us and our research has failed to uncover any Illinois cases directly on point. However, federal case law in this area supports our reasoning. In *United States v. Caggiano*, 660 F.2d 184 (6th Cir.1981), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1444, 71 L.Ed.2d 658 (1982), the district court disqualified the entire United States Attorney's Office from prosecuting the defendant because one of defendant's attorneys accepted a position with the office as an Assistant United States Attorney. The Sixth Circuit reversed and held that the disqualification of an entire governmental office was unnecessary so long as the former defense attorney was separated from any participation on matters affecting his former client. *Id.* at 191. The Sixth Circuit quoted at length from an American

Bar Association formal opinion[3] and we find this reasoning to be persuasive.

The Government has a strong interest in attracting well qualified attorneys. As long as the former defense attorney is shielded from any active involvement with his former client's case, no problems arise. In the case at bar, Mr. Lyons played no role in the prosecution of Petitioner. Therefore, even if Petitioner's version of the facts were accepted as true, we would decline to find that a conflict of interest existed. Thus, Petitioner's final argument is without merit.

### IV—Conclusion

■■ In light of our conclusion that Petitioner's assignments of error are without merit, we find that his appeal lacks merit. Therefore, we cannot say that the state court abused its discretion in denying an appeal bond nor was its decision irrational.

*Ergo*, for the foregoing reasons, Petitioner's petition for a writ of habeas corpus is DENIED.

---

3. When the disciplinary rules of canons 4 and 5 mandate the disqualification of a government lawyer who has come from private practice, his governmental department or division cannot practicably be rendered incapable of handling even the specific matter. Clearly, if DR 5–105(D) were so construed, the government's ability to function would be unreasonably impaired. Necessity dictates that government action not be hampered by such a construction of DR 5–105(D). The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice. The important difference in the adversary posture of the government lawyer is recognized by canon 7: the duty of the public prosecutor to seek justice, not merely to convict, and the duty of all government lawyers to seek just results rather than the result desired by a client. The channeling of advocacy toward a just result as opposed to vindication of a particular claim lessens the temptation to circumvent the disciplinary rules through the action of associates. Accordingly, we construe DR 5–105(D) to be inapplicable to other government lawyers associated with a particular government lawyer who is himself disqualified by reason of DR 4–101, DR 5–105, DR 9–101(B), or similar disciplinary rules. ABA Committee on Professional Ethics Formal Opinion 342, 62 ABAJ 517 (1976).