**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stephen GOOT, Defendant–Appellant.**

**No. 88–2179.**

United States Court of Appeals,
Seventh Circuit.

Argued March 28, 1989.

Decided Jan. 24, 1990.

John F. Hoehner, Asst. U.S. Atty., Kevin E. Milner, Asst. U.S.Atty. (argued), Hammond, Ind., for plaintiff-appellee.

Joseph S. VanBokkelen, Goodman, Ball & VanBokkelen, Highland, Ind., Nick J. Thiros, Cohen & Thiros, Merrillville, Ind., Ellen S. Podgor (argued), Miami Beach, Fla., for defendant-appellant.

Before CUDAHY and MANION,
Circuit Judges, and HENLEY, Senior
Circuit Judge.[*]

HENLEY, Senior Circuit Judge.

This case involves the criminal conviction of an attorney, Stephen Goot, on a two-count indictment, for "fixing" driving-under-the-influence (DUI) cases. One count, under what is commonly called the RICO statute, was for racketeering and the other was a corresponding conspiracy count. *See* 18 U.S.C. § 1962(c) & (d). For reversal, Goot argues the district court[1] erred in (1) refusing to disqualify the United States Attorney's office; (2) refusing to grant a hearing on the disqualification issue; (3) imposing an improper sentence; (4) excluding impeachment testimony; (5) admitting testimony of others' convictions; (6) denying a motion for acquittal based upon various aspects of the evidentiary proof of a RICO violation; (7) instructing the jury that the Lake County prosecutor's office can be an "enterprise"; and (8) refusing to instruct the jury on the definition of reasonable doubt.

In early 1984 Goot discovered that he was a suspect in Operation Bar–Tab, a federal investigation of the fixing of drunk driving cases in Lake County, Indiana.[2] On April 16, 1984 Goot hired attorney James Richmond to represent him in his defense. Richmond remained Goot's attorney until August, 1985 when Richmond was appointed as the new United States Attorney for the Northern District of Indiana, where Goot was prosecuted.

On October 20, 1987 a grand jury returned an indictment against Goot on both counts.[3] The principal official with whom Goot interacted and conspired was deputy prosecutor Nick Morfas. Goot pleaded not guilty and went to trial; Morfas pleaded guilty and testified against Goot.

The evidence at trial revealed the typical method of operation between Goot and Morfas. A prospective client would come to Goot after having been arrested and jailed for DUI, and freed by the posting of a cash bond. The defendant would agree to a price for Goot's legal services, with part of the fee to be paid by the bond money. To this end, Goot's new client would give him the bond receipt. Goot then would enter an appearance for his client and file a motion to dismiss pursuant to *Watt v. State*, 249 Ind. 674, 234 N.E.2d 471 (1968).[4]

---

[*] The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1] The Honorable James T. Moody, United States District Judge for the Northern District of Indiana.

[2] Operation Bar–Tab has resulted in the conviction of two judges, one judge pro tempore, the Lake County Clerk, two bailiffs, a deputy prosecutor (Goot's codefendant Nick Morfas), and a number of attorneys. A second investigation, Operation Lights–Out, has resulted in the convictions, thus far, of the county sheriff, assessor, two commissioners, and several lesser officials.

[3] The five-year statute of limitations, *see* 18 U.S.C. § 3282, would have run on seven of the eleven predicate acts in Count One within two weeks after the indictment was returned. Two of the remaining four acts already were barred.

[4] In *Watt*, the Indiana Supreme Court held that the practice of issuing a traffic ticket was insufficient as a form of charging an offender with a DUI offense under Indiana law, 234 N.E.2d at 474. Thereafter, defense attorneys began filing "*Watt* motions" to dismiss the DUI cases in which only a ticket had been issued. Courts would grant these motions with the condition that the prosecutor refile the cases using an information or affidavit within a thirty to sixty-day period, depending upon the given case. If

After filing a *Watt* motion, Goot would inform Morfas about the case and Morfas would steal and destroy the prosecutor's file. Sometimes Morfas would steal and destroy the court's file as well. Once the time for refiling had passed without any further action taken by the prosecutor, Goot would file a second motion to dismiss, which would be granted.[5] A check then would be issued by the prosecutor's office to Goot, the holder of the bond receipt, but payable to the person who initially posted the bond. Goot would give this check to Morfas who would forge the payee's signature and retain the funds as his share in the scheme.

In some cases, Morfas would represent himself to DUI defendants as an attorney, sign Goot's name to the paper work or have Goot sign his name, and then steal the files and collect the fees. Morfas needed to use Goot's name because he could not use his own, being a deputy prosecutor. As a quid pro quo, Morfas either would help Goot with one of Goot's cases or would pay Goot a share of the fees.

The jury found Goot guilty on both counts and he was sentenced to two concurrent twenty-year prison terms (the statutory maximum on each count) and a $25,-000.00 fine. Morfas, who was sentenced later, got four years and a $6000.00 fine.

## I. Motion to Disqualify

In December, 1987, shortly after the indictment was returned, Goot filed a timely pretrial motion to disqualify the United States Attorney's Office on the grounds that his fifth amendment right to due process and his sixth amendment right to counsel were violated by the prior representation by Richmond. In resisting Goot's motion, the government pointed out that on August 19, 1985, seven days before taking office, Richmond wrote a letter to Assist-

ant United States Attorney Andrew Baker stating that Richmond would recuse himself on all cases in which Richmond had a prior representation, including Goot's. The next day, August 20, Baker advised the Department of Justice of Richmond's recusal. All Assistant United States Attorneys in the Northern District office also were advised of Richmond's recusal. Upon the taking of office, Richmond appointed Assistant United States Attorney John Hoehner to be "Acting United States Attorney" on the Goot investigation. The government also provided to the district court affidavits from Richmond and the Assistant United States Attorneys involved in Goot's prosecution stating that no communications with Richmond had taken place with respect to this prosecution.

In refusing to disqualify the United States Attorney's office, the district court heavily relied on Rule 1.11(c) of the Indiana Rules of Professional Conduct (IRPC), the set of ethical rules in effect at the time.[6] Rule 1.11(c) reads in pertinent part: "[A] lawyer serving as a public officer or employee shall not ... participate in a matter in which the lawyer participated personally and substantially while in private practice...." The comment to this paragraph states that the rule "does not disqualify other lawyers in the agency with which the lawyer in question has become associated." The district court concluded that since other lawyers in the agency could participate, recusal of the entire Northern District office was not necessary. Juxtaposing this conclusion with the screening measures employed by the office, the district court denied Goot's motion. It also denied a request for a hearing on the motion on the ground that a hearing would only be for the purpose of "going fishing."

---

the prosecutor did not refile on a given case within the allotted time, a second motion to dismiss would be filed and would be granted, dismissing the case outright. Approximately 10% of cases in which *Watt* motions were filed were dismissed.

**5.** Evidence admitted at trial indicates that the prosecutor's office and apparently the court sys-

tem were in such a state of disarray that no one knew why there was a failure to prosecute a given case within the specified period.

**6.** The district court's local Rule 1(f) provided for adoption of state rules for governing the ethical conduct of attorneys.

Goot argues that the district court erred in relying on the IRPC and that it should have relied on the Indiana Code of Professional Responsibility (ICPR), because the IRPC only superseded the ICPR on January 1, 1987—prior to Goot's motion to disqualify, but long after the important facts of this case arose. Specifically, Goot argues that Canons 4 ("A lawyer should preserve the confidences and secrets of a client") and 9 ("A lawyer should avoid even the appearance of professional impropriety") of the ICPR required disqualification of the Northern District office.

For purposes of this case, we discern no real difference between the IRPC and the ICPR. Both either state or imply the ethical principle prohibiting conflicts of interest or even the appearance of one, and neither answers the question whether that principle was violated here. While in general the Indiana Supreme Court has relied upon its ethical rules in requiring complete office recusal in criminal cases, we observe that this court at times has distinguished between what may be inappropriate ethical conduct for a prosecutor and what may be a constitutional violation. *Compare State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1379 (Ind.1982) (holding that when the elected prosecutor and not just one of his deputies is disqualified, the entire office must be disqualified) *with Havens v. Indiana*, 793 F.2d 143, 145 (7th Cir.) (finding no sixth amendment violation by prosecutor, who had previously represented the defendant, when charges were four years apart and were unrelated, but nevertheless, chastising the government's ethical decision not to recuse the prosecutor anyway), *cert. denied*, 479 U.S. 935, 107 S.Ct. 411, 93 L.Ed.2d 363 (1986). Even so, with the added weight of the constitutional right to counsel of choice in a criminal case, the ethical considerations are basically the same and both the district court and this court have a duty to supervise ethical con-

duct of attorneys. While ethical codes per se may not be dispositive of the outcome of a criminal case, when an actual conflict of interest exists we must examine and weigh the circumstances of the particular case. *See United States v. O'Malley*, 786 F.2d 786, 789–90 (7th Cir.1986).

The government points out that the Attorney General, as statutorily mandated, *see* 28 U.S.C. § 528,[7] had promulgated rules on recusal and that the procedure followed in this case strictly complied with those rules. *See* United States Attorney's Manual § 1–3.515 ("U.S. Attorney who recuses should promptly notify the appropriate division and ... the Executive Office for the U.S. Attorneys. In exceptional cases, the recusation of the U.S. Attorney may require the recusation of all members of that office."); *see also* 28 C.F.R. § 0.131 (1988) ("Each U.S. Attorney is authorized to designate any Assistant U.S. Attorney in his office to perform the functions and duties of the U.S. Attorney ... with respect to any matter from which he has recused himself...."). Finally, an affidavit by Manual Rodriguez, Legal Counsel, Executive Office for the United States Attorneys, asserts that based upon a thorough review of the case, recusal of the entire Northern District staff was deemed unnecessary.

The government's adherence to its standardized procedure and its conductance of an internal review on this issue is commendable and helpful, but it, of course, is not dispositive. The question whether Goot's rights were violated is not left for his adversary to determine, but is for a court of law. We now turn to that determination.

■ This circuit employs a three-part sequential inquiry in deciding the question whether disqualification of an office is necessary when an attorney has switched from one side to another. *Schiessle v. Stephens*,

7. 28 U.S.C. § 528 states:

The Attorney General [of the United States] shall promulgate rules and regulations which require the disqualification of any officer or employee of the [United States] Department of Justice, including a United States attorney

or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof....

717 F.2d 417, 420–21 (7th Cir.1983).[8] First, does a "substantial relationship" exist between the subject matter of the prior and present representations? Second, if so, has the presumption of shared confidences with respect to the prior representation been rebutted? Third, if not, has the presumption of shared confidences with respect to the present representation been rebutted? *Id.*

    ■ The government concedes the first two points: Goot alleges, and Richmond admits, that confidential information was communicated between them. It is only the third point that is in issue. The government argues that it erected "Chinese walls" between Richmond and the prosecution of this case by Richmond's appointment of Hoehner as the Acting United States Attorney, as verified by affidavits asserting that no secrets were disclosed. Goot argues that the appointment of one's assistant in the same office does not rebut the presumption that confidences were shared.

Indeed, "[a] very strict standard of proof must be applied to the rebuttal of this presumption … and any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification." *LaSalle Nat. Bank v. County of Lake,* 703 F.2d 252, 257 (7th Cir.1983). However, the office under review can rebut the presumption by submitting "objective and verifiable evidence," *Schiessle,* 717 F.2d at 421, which shows that "specific institutional mechanisms" have sufficiently screened the "infected" attorney. *LaSalle Nat. Bank,* 703 F.2d at 259.

The predominant theme running through this court's prior decisions is that disqualification is required when screening devices were not employed or were not timely employed. *See Schiessle,* 717 F.2d at 421; *Analytica, Inc. v. NPD Research,* 708 F.2d 1263, 1268 (7th Cir.1983);[9] *see also LaSalle Nat. Bank,* 703 F.2d at 259 ("screening arrangements were not established until the disqualification motion was filed"). Here, as indicated, screening began before Richmond took office and culminated with the appointment of Hoehner. The screening mechanisms employed were in accordance with established institutional procedure. Thus, the facts of this case are very different from those of the cited cases which required disqualification.

More specifically, the attorneys of the office were instructed on Richmond's recusal, thus preventing any discussion with him about the case. *LaSalle Nat. Bank,* 703 F.2d at 259. By his recusal, Richmond was prohibited from access to the files on this case. *Schiessle,* 717 F.2d at 421. "[B]oth the disqualified attorney and others in [the office] affirmed these facts under oath," *LaSalle Nat. Bank,* 703 F.2d at 259; and, moreover, the office instituted the screening mechanisms as soon as the "disqualifying event occurred." *Id.*

We agree with Goot that more could have been done. During oral arguments the government conceded that the case files conceivably could have been accessed by the United States Attorney at night or on weekends. The practice of maintaining locked case files with keys distributed to a select few has been cited previously by this court as a substantial screening mecha-

---

**8.** The *O'Malley* court declined to employ civil cases in determining the question whether a defense attorney should be disqualified in a criminal case. *O'Malley,* 786 F.2d at 790. However, *O'Malley* was not a case about the effectiveness of screening devices. Rather, the disqualified attorney in *O'Malley* represented both the defendant and a key prosecution witness simultaneously. To the extent that the issue in a criminal case involves the effectiveness of screening an "infected" attorney, the civil cases may provide some useful guidelines.

**9.** The *Analytica* court held that when an entire law firm switches from one side to another and

a substantial relationship exists between the prior and present representations, an irrebutable presumption arises that confidences were shared. *Analytica,* 708 F.2d at 1268. In such a case, no measure of screening mechanisms could cleanse the taint and disqualification is required. *Id.*

    *Analytica* may be distinguished from the case *sub judice.* Here, the record shows that Richmond's former firm, Goldsmith, Goodman, Ball & VanBokkelen continued to represent Goot throughout his trial and appeal. Moreover, Richmond comprises only one prosecutor at the United States Attorney's office, albeit its chief.

nism. *Id.* Likewise, the codes necessary to access pertinent information on electronic hardware must remain secret. Nevertheless, the absence of one or both of these mechanisms would not render infirm the screening mechanisms employed in this case.

Goot argues that there are several indications that Richmond was not screened. First, materials filed with the court were submitted in the name of James Richmond, United States Attorney, but signed by John Hoehner, *Assistant* United States Attorney. Second, some materials submitted by the government are in the name of Richmond, as above, but signed by Assistant United States Attorney Kevin Milner. Hoehner's name does not appear on these latter materials. Finally, Goot points out that Assistant United States Attorney James Meyer's affidavit, submitted in resistance to Goot's motion to disqualify, stated "In this respect, Mr. Richmond told me that he had recused himself in all aspects of the 'Bar–Tab Investigation,'" but that a government information submitted to the same court below against another Operation Bar–Tab defendant was personally signed by Richmond, the implication being that Richmond indeed was involved in Operation Bar–Tab.

We address each point in tandem. As is common in busy legal and lay offices, the paper supply is preprinted and the word processors are preprogrammed to include certain information that always appears on formal documents (*e.g.*, a law firm's letterhead). During oral arguments the government explained that Richmond's name is preprinted on various forms that are used daily by the staff. We conclude that the government's failure to remove Richmond's preprinted name should not be construed as more than clerical inattention on its part. We suggest closer attention.

Likewise, the appearance of Milner's name, instead of Hoehner's, is hardly surprising. The record shows that Milner tried the case below and he, in fact, argued the appeal before this panel. We note that Hoehner's appointment as Acting United States Attorney with respect to Goot's case did not mean Hoehner had to proceed in its prosecution without the assistance of his subordinates.

We are more troubled by Goot's third point. A fair reading of Meyer's affidavit suggests that the term "In this respect" refers to Richmond's recusal on the Goot case specifically, and not to a recusal on Operation Bar–Tab in *every* respect. As such, there is no implication of prejudice to this defendant. *See United States v. Caggiano*, 660 F.2d 184, 188 (6th Cir.1981), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1015, 71 L.Ed.2d 303 (1982). Richmond's own affidavit supports this conclusion. Nevertheless, there is some ambiguity with this wording, and a notion that Richmond was involved in Operation Bar–Tab at all could give rise to an appearance of impropriety. We note, however, that Operation Bar–Tab was a large investigation. *See supra* n. 2. The record indicates that the Operation Bar–Tab defendant against whom Richmond signed an information was not a co-defendant of Goot. Goot does not allege otherwise. Thus, we reject as dispositive Goot's argument that there are indications Richmond was not screened.

In deciding questions of disqualification we balance the respective interests of the defendant, the government, and the public. *O'Malley*, 786 F.2d at 790. Goot has a fundamental interest in his fifth amendment right not to be deprived of liberty without due process of law and in his sixth amendment right to counsel. *See id.* The government has an interest in fulfilling its public protection function. To that end, the convenience of utilizing the office situated in the *locus criminis* is not lightly to be discarded. Furthermore, the government has a legitimate interest in attracting qualified lawyers to its service. *LaSalle Nat. Bank*, 703 F.2d at 258.

However, we also note that not unfavorable to Goot is the government's interest in sustaining public confidence in its high level of integrity by dealing fairly, both in fact and in appearance, with criminal defendants. The public has an interest in assuring that government is not corrupt and that public officials, officers of the court such

as Goot, and others who are responsible for corrupting government are fairly and promptly tried for their alleged crimes. Balancing these interests, and despite some disquieting aspects of the record, we hold that the measures employed by the government sufficiently screened Richmond from the prosecution of Goot so that each and every particular interest of Goot, the government, and the public was met.

## II. Request for a Hearing

■ Goot argues that the district court erred in not granting him a hearing on the disqualification issue. An evidentiary hearing on recusal is useful but not always required. *See United States v. O'Malley*, 786 F.2d at 793 (upholding the disqualification of criminal defendant's counsel who had previously represented a key government witness). Goot does not make a substantial showing that any actual disclosure took place or that he was prejudiced in any way. Furthermore, the record shows that the issue was well-briefed by both sides. Nevertheless, Goot claims that a hearing was required because procedural irregularities occurred in that the prosecutor's office of the Northern District first recused itself, but later reversed that decision and resumed the prosecutor's role.

The record shows that the government sought to disqualify Richmond's former firm from its representation of Barry Sherman, a key witness in this case and Goot's former law partner. For this purpose only, the Justice Department appointed Assistant United States Attorney for the Southern District of Indiana, David Ryan. In pursuing the disqualification of Sherman's counsel, Ryan had to question the propriety of the same firm's representation of Goot. By using Ryan for this purpose, the Northern District was not required to question the propriety of its own chief's prior acts when he represented Goot. We, therefore, agree with the district court that the Northern District's recusal in moving to disqualify Sherman's counsel was irrelevant to the question whether the Northern

District should have recused itself with respect to the Goot prosecution.[10]

## III. Disproportionate Sentence

Goot argues that he received a harsher sentence than his more culpable codefendant, Nick Morfas, and relies in part on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), which holds that in some circumstances sentences that are disproportionate to the crime may be in violation of the eighth amendment.

In general, it may be said that district courts are given broad discretion in sentencing and that absent an abuse of that discretion the sentence will not be overturned on appeal. *United States v. Cardi*, 519 F.2d 309, 311–12 (7th Cir.1975). Successful challenges to the proportionality of particular sentences should be "exceedingly rare." *Hutto v. Davis*, 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982). Indeed, a sentence that falls within statutory limits generally will not be overturned. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The sentences imposed here were the maximum in each case but fell within statutory limits.

The district court, however, must avoid not exercising "any discretion at all in imposing the sentence." *United States v. Griffin*, 827 F.2d 1108, 1118 (7th Cir.1987), *cert. denied*, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988). "[W]here the facts appearing in the record point convincingly to the conclusion that the district court has, without any justification, arbitrarily singled out a minor defendant for the imposition of a more severe sentence than that imposed upon the co-defendants, this court will not hesitate to correct the disparity." *United States v. Wiley*, 278 F.2d 500, 503 (7th Cir.1960); *see also United States v. Ely*, 719 F.2d 902, 907 (7th Cir.1983) (when a judge "sentences similar offenders to greatly disparate terms for the same crime, without any explanation, an inference arises that he failed to exercise his discre-

**10.** Other irregularities cited by Goot as requiring an evidentiary hearing were not presented to the district court, but we, nevertheless, have addressed them elsewhere in this opinion.

tion"), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984).

In this case, the district court did not give its reasons for imposing the statutory maximum.[11] The government notes that without help from Morfas they would not have been able to convict Goot. The government also reasons that while the district court did not give its reasons when sentencing Goot, it likely adopted the arguments made by the government during the sentencing hearing. Finally, during oral argument the government assured this court that as a standard practice it always asks for the statutory maximum in RICO violations and that Goot was not singled out for a stiff sentence for going to trial. Goot asserts that he was less culpable than Morfas who received a total of four years. Morfas was a public official who stole and destroyed records, forged signatures, and was at the center of the operation. Without him, Goot could not have committed the crime, but Morfas, who was able to obtain clients of his own, conceivably could have committed the crime without Goot. Goot urges that *Wiley* therefore requires reversal of the sentence.

■ A district court always should tell a defendant why a term is being imposed. Indeed, if the criminal acts in this case took place today, the sentencing court would be required to "state in open court the reasons for its imposition of the particular sen-

tence...." 18 U.S.C. § 3553(c). But required or not, the practice is wise.

■ Nevertheless, we note that in *Wiley* the defendant was sentenced only four days before his equally culpable and more culpable codefendants. *Wiley,* 278 F.2d at 501. In the present case, Goot was sentenced approximately one month before Morfas. We are unwilling to impose on the district court a duty of anticipating the reasons for sentencing it will state when it has a codefendant before it. Such a rule would impose an onerous burden upon the district judge. Goot's sentence, as the government's argument at the sentencing hearing reveals, is comparable to the 15–year and 20–year sentences imposed on two other Operation Bar–Tab defendants. Furthermore, it is possible that Goot's sentence is not too long, but Morfas's is too short.[12] In present circumstances, we hold that Goot's sentence is within the statutory range and its imposition was not shown to be either an abuse of discretion or constitutionally disproportionate.

However, what we hold with respect to length of sentence is not to be considered as prejudicial to any adjustment that is due. The offenses committed in this case took place prior to November 1, 1987. Thus, under the version of Rule 35(b) of the Federal Rules of Criminal Procedure in effect for this case,[13] Goot may move for a

---

**11.** The sentencing transcript reflects that, prior to the court's rendering the sentence, Goot's attorney requested the court to explain any imposition of sentence greater than what the new Sentencing Guidelines would have required were they effective at the time with respect to this case. Goot's attorney estimated a prison term of between 12 and 38 months under the Guidelines.

**12.** Goot's sentence appears to be somewhat longer and Morfas's shorter than sentences imposed on some judges who have accepted bribes. *See United States v. Brennan,* 629 F.Supp. 283 (E.D.N.Y.1986) (Weinstein, J.) (sentencing state court judge to two consecutive five-year sentences for acceptance of numerous bribes over the course of many years); *id.* at 301 (noting trend of ten-to-fifteen year sentences for judges convicted in Greylord prosecutions in the Northern District of Illinois). The conduct of a judge or other public official who joins in a bribery scheme, and thus abuses the public trust by allowing the judicial process to

be corrupted, might be considered at least as reprehensible as the conduct of an attorney engaging in similar conduct.

**13.** Rule 35(b) reads:

**Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation....

Fed.R.Crim.P. 35(b), Rule Applicable to Offenses Committed Prior to Nov. 1, 1987. The current version of Rule 35, effective for cases in which offenses were committed on or after November 1, 1987, does not allow a defendant to

reduction of his sentence, and if such a motion is timely filed we are confident that the district court will consider it with an open mind and adjust the sentence if persuaded that the circumstances call for a reduction. *Cf. United States v. Turner*, 864 F.2d 1394, 1401 (7th Cir.1989) (per curiam).

## IV. Refusal to Allow Goot to Present a Witness

Goot argues that the district court erred in sustaining an objection that prevented him from putting a witness on the stand who would have testified that he gave Morfas $3000.00 for fixing his DUI case, not $1000.00 as Morfas had testified on cross-examination. However, "[t]he rule in this circuit is that a witness may not be impeached by contradiction as to collateral matters elicited on cross-examination." *United States v. Rovetuso*, 768 F.2d 809, 817 (7th Cir.1985), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *see also* Fed.R.Evid. 608(b).

## V. Admission of Prejudicial Testimony

■ Goot next argues that the district court erred in allowing witnesses to testify about the convictions of judges in fixing DUI cases, because such testimony prejudiced the jury against him. This testimony was elicited in response to Goot's having implied on cross-examination that the judges would have noticed any alleged improprieties. The judges' convictions were brought out in redirect examination to show that Morfas and Goot had the opportunity to perpetrate their crimes because of the general climate of corruption in the Lake County court system. We hold that the admission of this testimony was within the district court's discretion. *United States v. Serlin*, 707 F.2d 953, 959 (7th Cir.1983).

## VI. Sufficiency of Evidence

■ Goot argues that the district court erred in denying his motion for acquittal in that there was insufficient evidence to prove the underlying predicate acts to sus-

tain a RICO violation or to show a nexus with the "enterprise."

To sustain a RICO violation the government had to prove at least two predicate acts. Predicate acts one through nine were based on bribing a public official in violation of the Indiana Bribery Act. *See* Ind. Code § 35–44–1–1(a)(1). Acts ten and eleven were based on Goot's taking a bribe, the theory being Goot aided Morfas in getting bribes in violation of the same Act. *See id.* § 35–44–1–1(a)(2); *see also id.* § 35–41–2–4 ("A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...."). Allowing the government all reasonable inferences from the evidence, we conclude that a rational jury could have found Goot guilty. *United States v. Garner*, 837 F.2d 1404, 1422 (7th Cir.1987), *cert. denied*, 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988).

Furthermore, although Goot asserts that his alleged acts affected his clients only and not the prosecutor's office, by bribing Morfas to steal the prosecutor's files Goot rendered it virtually impossible to prosecute Goot's clients. Thus, we hold that the government proved that the predicate acts had an effect on the "enterprise," the Lake County Prosecutor's Office. *See United States v. Yonan*, 800 F.2d 164, 167 (7th Cir.1986), *cert. denied*, 479 U.S. 1055, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987). We conclude that the district court did not err in denying Goot's motions for acquittal.

## VII. The Prosecutor's Office as an "Enterprise"

Next, Goot argues that the district court erred by instructing the jury that the prosecutor's office can be an "enterprise" for RICO purposes. However, this argument already has been foreclosed, *see, e.g., Yonan*, 800 F.2d at 167, and we decline Goot's invitation to reconsider this precedent.

## VIII. Requested Instruction on "Reasonable Doubt"

Since the filing of appellant's brief, the United States Supreme Court denied a peti-

seek a reduction of sentence. *See* Fed.R.Crim.P. 35 (as amended by Pub.L. 98–473).

tion for a writ of certiorari to review the decision in *United States v. Littlefield*, 840 F.2d 143 (1st Cir.), *cert. denied*, 109 S.Ct. 155, 102 L.Ed.2d 126 (1988). Consequently, in his reply brief, Goot has abandoned his last argument that the court erred in not appropriately instructing the jury on the definition of "reasonable doubt." *See, e.g., United States v. Glass*, 846 F.2d 386, 387 (7th Cir.1988).

As indicated, without prejudice to such modification, if any, as may result from a timely filing of a motion for reduction of sentence under Fed.R.Crim.P. 35, the judgment of the district court is affirmed.