**In re GRAND JURY 91–1.**

**File No. 91–4A–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 4, 1992.

N. George Metcalf, S. David Schiller, Asst. U.S. Attys., U.S. Attys. Office, Richmond, Va., for plaintiffs.

Gordon A. Coffee, Richard A. Hibey, Timothy M. Broas, Anderson, Hibey, Nauheim & Blair, Thomas E. Wilson, Michael B. Hubbard, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., Aubrey R. Bowles, III, Aubrey R. Bowles, IV, Bowles & Bowles, Richmond, Va., for defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on Swank Corporation's and Donald W. Swank's Motion to Disqualify the United States Attorney's Office for the Eastern District of Virginia. An evidentiary hearing on this motion was held on April 28, 1992. For the reasons stated below, this motion is DENIED.

### I. FACTUAL BACKGROUND

At the evidentiary hearing on this matter, the following facts came to light: The U.S. Postal Inspection Service's investigation of the Swank Corporation, and certain members of its management and sales staff, began in approximately late 1990. That investigation required consultation with the United States Attorney's Office for this district. At the time approval was granted, Henry Hudson was the U.S. Atty. for the Eastern District of Virginia. In March, 1991, a search warrant was obtained which resulted in the seizure of documents related to the investigation. Decisions to initiate the investigation, and decisions concerning the scope of the investigation were made by Mr. Hudson, long before Richard Cullen became United States Attorney in this district.

Before his appointment as U.S. Attorney, Richard Cullen, as a partner in McGuire, Woods, Battle & Boothe, represented Donald Swank in his separation and divorce from his wife. Mr. Cullen's representation included privileged and confidential information and, of necessity, Mr. Cullen had knowledge of Mr. Swank's relationship with Swank Corporation.

In a similar way, before his appointment as an Assistant U.S. Attorney for the Eastern District of Virginia, John G. Douglass, a partner in the law firm of Wright, Robinson, Osthimer & Tatum, represented Samuel Bennett Harper, Administrative Vice

President of Swank Corporation, in this investigation. Mr. Douglass's representation included privileged and confidential information and, of necessity, Mr. Douglass had knowledge of Mr. Harper's relationship with Swank Corporation and the full and complete details of how the Corporation functioned. Douglass also entered into a joint defense confidentiality agreement with Swank's former counsel and into a joint defense agreement with successor counsel for Swank.

On November 18, 1991, the President formally appointed Richard Cullen as the U.S. Attorney for the Eastern District. In preparation for Mr. Cullen's assuming the position of U.S. Attorney and pursuant to Department of Justice procedures, then acting U.S. Attorney Kenneth Melson reviewed the existence of all pending matters in the Eastern District with Mr. Cullen to identify any pending matters which were in any way connected with either Mr. Cullen or his law firm. That review identified the Swank investigation. Accordingly, prior to assuming his duties, Mr. Cullen recused himself from the investigation, advised the Dept. of Justice of the recusal, directed that he not be informed or consulted on any matter concerning the investigation, appointed A.U.S.A. Justin Williams to supervise on all matters related to the Swank investigation, and appointed A.U.S.A. Kenneth Melson as Acting United States Attorney for all matters Mr. Cullen could not act upon. Mr. Cullen testified that he has had no involvement and will have no involvement whatsoever with the Swank investigation. All decisions concerning it have been made by Mr. Williams or AUSA David Schiller.

In a like manner, John Douglass recused himself from this matter prior to joining the office. He states by way of affidavit that he has not divulged any information concerning his prior representation of Mr. Harper and has not been involved in any aspect of the investigation since joining the office. Prior to joining the office, Mr. Douglass negotiated an immunity agreement on behalf of Mr. Harper with the Government and, since then, Mr. Harper has been actively cooperating with the Government's investigators.

On June 6, 1991, before Mr. Cullen had been appointed as U.S. Attorney, Swank's former counsel in this investigation, Howard W. Gutman, a partner in the law firm of Williams & Connolly, attended a meeting at the law offices of McGuire, Woods to interview potential witness Robert Patterson concerning business advice he gave to Donald W. Swank over the years. Although he was aware of the likelihood of his upcoming appointment and although Mr. Gutman advised against it, Richard Cullen attended the meeting at the behest of Mr. Patterson. Mr. Cullen, however, assured Mr. Gutman that if Mr. Cullen became U.S. Attorney, he would necessarily recuse himself from any investigation concerning Donald Swank or Swank Corporation. Thus, with the assurance that no confidential information concerning the meeting would leak to the U.S. Attorney's office, Mr. Gutman proceeded with the interview of Mr. Patterson.

After he had assumed the office of the U.S. Attorney for the Eastern District of Virginia, on March 11, 1992, Mr. Cullen met with Aubrey Bowles III and his son, Aubrey Russell Bowles IV in Mr. Cullen's Richmond office. Although Mr. Cullen was unaware of this, the law firm of Bowles & Bowles was about to become counsel of record for Mr. Swank and his corporation. The meeting was arranged by the elder Mr. Bowles through Mr. Cullen's secretary, Ms. Gloria Allen. As a result of some miscommunication, Ms. Allen never made a connection between Bowles & Bowles and the Swank investigation. Mr. Cullen did not know what the meeting was to be about, and, at the time, Mr. Cullen was under the impression that Donald Swank and Swank Corporation were represented by the law firm of Williams & Connolly. In fact, Mr. Cullen did not even believe that the elder Bowles, an longtime acquaintance, practiced in the area of criminal law.

After engaging in casual conversation for a few minutes, Mr. Bowles III brought up the reason for the meeting. He told

Cullen that Bowles & Bowles now represented Swank and that he thought the entire U.S. Attorney's Office for the Eastern District of Virginia should recuse itself from the case. Mr. Cullen immediately told his visitors that he had recused himself from the case long ago and that, if they wanted to seek to disqualify his whole office, they should file an appropriate motion. No substantive, privileged, or confidential information was revealed at the meeting. The three men exchanged some more pleasantries on various subjects and then bid their goodbyes. The entire meeting did not last more than ten minutes.

At the evidentiary hearing on this matter, Mr. Donald Swank testified that at his trial, he is inclined to call Mr. Cullen and Mr. Patterson to testify in connection with a possible advice of counsel defense. Mr. Swank stated that he understood that if he did call his former attorneys as witnesses in this regard, he would be waiving the attorney-client privilege as to their representation of him.

Due to the fact that Mr. Cullen had recused himself and erected a Chinese wall between himself and the Swank investigation, the U.S. Attorney's office was never informed about Mr. Cullen's meeting the Bowles' or about Mr. Cullen's earlier contact with Mr. Gutman. No evidence came out at trial that any confidentiality has been breached either by Mr. Cullen or Mr. Douglass in connection with their former clients. The only contact Mr. Cullen and Mr. Douglass have had with their colleagues in the U.S. Attorney's Office on this case has been for the very limited purpose of answering the instant motion.

## II. DISCUSSION OF AUTHORITY

The ethical standards relating to the practice of law in this Court are set forth in the ABA Code of Professional Responsibili-

ty and the Virginia Code of Professional Responsibility. Local Rules 7(M)(IV)(B); *see In re Asbestos Cases*, 514 F.Supp. 914, 919 (1981). The ABA Code and Virginia Code Canon 9 states, "A Lawyer Should Avoid Even the Appearance of Impropriety." Disciplinary Rule 9–101(B) states that a "lawyer shall not accept private employment in a matter in which he had a substantial responsibility while he was a public employee." Although neither the ABA Code nor the Virginia Code addresses the obverse situation of DR 9–101(B) (i.e. prohibiting a government lawyer from participating in a matter in which the lawyer participated personally and substantially while in private practice), the Defendants maintain that such a prohibition should be mandated in the name of avoiding the appearance of professional impropriety.

Although both Mr. Cullen and Mr. Douglass have erected a "Chinese wall" between themselves and the Swank investigation, because of the continuing danger that an attorney may unintentionally transmit confidential information due to the day-to-day contact an attorney has with other members of his "firm," Swank argues that disqualification of the entire office is required to guard against even the possibility of inadvertent use of confidential information.[1] Swank maintains that this disqualification is required even absent a showing that an attorney expressed explicit confidences which were expressly transmitted to or received by the other member of the law firm. *See Trone v. Smith*, 621 F.2d 994 (9th Cir.1980). Although it is unnecessary to trigger disqualification, Swank asserts that the Postal Inspection Service and U.S. Attorney were in fact exposed to privileged and confidential information when, pursuant to a valid search, it seized Mr. Swank's file concerning the separation and divorce proceedings. The Government flatly denies this assertion.[2]

---

1. This result is mandated, according to Swank, by both the Virginia Code and the ABA Code:

   If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment.

Virginia Code DR 5–105(E); ABA Code DR 5–105(D) (same).

2. The Government states that this particular file was not seized. Postal Inspector Sussan conducted the search of Mr. Swank's office on March 5, 1991, noted the divorce file was not responsive to the search warrant, and did not

As support for its argument, the Defendants cite a vast collection of state law cases, interspersed by references to various ethical standards and federal cases applying the standards to *private* counsel in *civil* matters. Since Swank has no evidence that confidentiality has been compromised or that the Chinese wall erected by Mr. Cullen and Mr. Douglass has been breached in this case, the Defendants are forced to rely on a "Caesar's Wife" type argument. The following excerpt essentially sums up their position:

> Not only must evil itself be avoided but any significant appearance thereof must likewise be avoided. The presence of a former leading criminal defense attorney, near the top of a public prosecutor's office, suggests to those of a paranoid and conspiratorial turn of mind the presence of a fox in the hen house. We do not think that such abnormal suspicion has any reasonable basis in fact whatsoever, but since a public prosecutor must perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof for appearance's sake, the basis for this suspicion should be eliminated.

*Younger v. Superior Court,* 77 Cal.App.3d 892, 144 Cal.Rptr. 34, 37 (1978). This sentiment, however, misstates the law, and it should be noted that movants fail to cite one federal case that supports their argument that whenever an individual who had some connection with an investigation target joins the staff of a U.S. Attorney's Office, that entire office is disqualified from investigating the target.

In fact, the federal courts have been uniform in rejecting the Defendants' argument. A number of federal courts have ruled that where an attorney who formerly represented or had a connection with a defendant, joins the U.S. Attorney's Office but has no involvement in the prosecution (by recusal and Chinese wall), then there is no basis to disqualify the entire U.S. Attorney's Office. Basically, the federal courts addressing this issue have recognized that there is quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government. *See, e.g., United States v. Caggiano,* 660 F.2d 184, 190 (6th Cir.1981). The Sixth Circuit in *Caggiano* explained the reason for the distinction:

> The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice.... [T]he duty of the public prosecutor is to seek justice, not merely to convict, and the duty of all government lawyers is to seek just results rather than the result desired by a client.

*Id.* at 191 (quoting Formal Opinion 342, 64 A.B.A.J. 517 (1976).[3]

The most recent and the most factually similar case on this issue is *United States v. Goot,* 894 F.2d 231 (7th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 45, 112 L.Ed.2d 22 (1990). In *Goot,* the defendant had been indicted for RICO and conspiracy charges. Pre-indictment, Mr. Goot had been represented by the man who was now the U.S. Attorney and whose office had indicted, prosecuted, and ultimately obtained a conviction of his former client.

As in this case, the new U.S. Attorney in *Goot* recused himself on all cases in which he had a prior involvement, including Mr. Goot's. The Assistant U.S. Attorneys were informed of this decision, and an Assistant was designated to act as U.S. Attorney on

take the file. This was communicated to Mr. Swank's first counsel, Mr. Kaestner, by letter dated March 8, 1991.

**3.** Other courts have used exactly the same reasoning as the *Caggiano* court in holding that the disqualification of one U.S. Attorney or Assistant U.S. Attorney, assuming there are proper safeguards enacted, does not serve to disqualify the entire office. *See, e.g., In re Grand Jury Investigation (Jackson),* 696 F.2d 449 (6th Cir. 1982); *United States Ex Rel. Price v. Lane,* 723 F.Supp. 1279, 1284–85 (C.D.Ill.1989); *United States v. Judge,* 625 F.Supp. 901, 902 (D.Ha.1986) (regarding the Federal Defender's Office); *United States v. Hubbard,* 493 F.Supp. 209 (D.D.C.1979), *aff'd sub. nom., United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981).

all matters concerning Goot's case. *Id.* at 233. The Seventh Circuit ruled that the entire U.S. Attorney's Office was not required to be disqualified even though the defendant's attorney had been appointed U.S. Attorney. The court found that immediate recusal by the new U.S. Attorney, appointment of an Assistant to act as U.S. Attorney on the particular case, and the absence of discussions concerning the case were sufficient screening mechanisms. *Id.* at 235.

The *Goot* Court noted that in "deciding questions of disqualification we balance the respective interests of the defendant, the government, and the public." *Id.* at 236. In regards to the government's interest, the court pointed out that the government has a legitimate interest in attracting qualified lawyers to its service. Furthermore, the convenience of utilizing the office situated in the *locus criminis* is not to be lightly disregarded. *Id.*

In this case, United States Attorney Cullen recused himself prior to taking office, as did Mr. Douglass. These recusals were communicated to the assistants, and no communications concerning the case have occurred. Assistant U.S. Attorney Williams was appointed to supervise the Swank investigation and has been functioning in that role. In addition, unlike the

*Goot* case, the movants admit that Mr. Cullen did not represent Donald Swank in a related criminal matter, but only in a domestic relations dispute.[4] Finally, the Court is under the impression that Mr. Cullen will not be called as a witness in this case. However, should he in fact be called to testify as to privileged and confidential matters regarding his representation of Donald Swank, the recusal issue would become moot, as Swank will have waived any attorney-client privilege.

## III. CONCLUSION

Under the federal authority cited above, it seems clear that Mr. Cullen and Mr. Douglass did all the things necessary to insure that the entire U.S. Attorney's Office for the Eastern District of Virginia need not be disqualified from investigating and prosecuting this case.[5] The Defendants motion on this issue is, therefore, DENIED.

---

4. The Defendants never explain how or why Mr. Swank's separation and divorce, which was handled by Mr. Cullen, would have some bearing on Mr. Swank's criminal activities. The Fourth Circuit has noted that no question of conflict even arises in a case where an attorney for a defendant on a completely separate, unrelated matter (such as a divorce, perhaps), subsequently becomes a prosecutor and participates in the prosecution of his former client. *United States v. Schell,* 775 F.2d 559, 565–66 n. 5 (4th Cir. 1986).

5. This result is also warranted by a reading of the relevant Fourth Circuit cases. In *United States v. Schell,* 775 F.2d 559, 565–66 (4th Cir. 1985), the Fourth Circuit ruled that where a former defense counsel joins the U.S. Attorney's Office and then *actively participates* in a prosecution related to his former client, then the client's due process rights are violated. In so ruling, the court cited the Sixth Circuit's opinion in *Caggiano* with approval.

The court in *Schell* also distinguished its prior opinion of *United States v. Grande,* 620 F.2d

1026 (4th Cir.1980), a case in which the U.S. Attorney who had signed the indictment had been a member of a law firm that had for many years represented an unindicted co-conspirator and important government witness and had other minor dealings with persons known to the defendant. Because the U.S. Attorney had recused himself and because the assistants stated that he had not been at all involved in their decisions in the case, the *Grande* Court stated that "[o]n these facts, we see no evidence of vindictive or selective prosecution. Indeed, we are unable to perceive any evidence of an appearance of impropriety." *Id.* at 1031.

Thus, although neither of these Fourth Circuit cases are directly on point, given the *Grande* Court's approval of the recusal/Chinese wall approach and the *Schell* Court's emphasis on the active participation of the conflicted prosecutor, as well as the favorable reference to *Caggiano,* its seams clear that the Fourth Circuit is in accord with the other federal courts who have addressed this issue.